61 P.3d 585

Ronald R. McCANN, individually and as a shareholder of McCann Ranch & Livestock Co., Plaintiff-Appellant,

v.

William V. McCANN, Jr., as an officer, director and shareholder of McCann Ranch & Livestock Co., Gary E. Meisner, as a director and shareholder of McCann Ranch & Livestock Co., and McCann Ranch & Livestock Co., an Idaho corporation, Defendants-Respondents.

No. 27229.

Supreme Court of Idaho, Lewiston, October 2002 Term.

Dec. 31, 2002.

Winston & Cashatt, Coeur d'Alene, ID./Spokane, WA., for appellant. Maris Baltins argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent McCann. Merlyn W. Clark appeared.

Clements, Brown & McNichols, Lewiston, for respondent Meisner. Michael E. McNichols argued.

McDevitt & Miller, Boise, for respondent McCann Ranch & Livestock Corp. Charles F. McDevitt appeared.

WALTERS, Justice.

This is an appeal from the dismissal of a shareholder's action. Ronald McCann ("Ron") brought the action, both individually and derivatively, naming as defendants his brother, William McCann, Jr. ("Bill"), who is a director and shareholder of McCann Ranch & Livestock Co. ("the corporation"), Gary Meisner, who is a director and the trustee for William McCann, Sr.'s trust, and the corporation. The district court dismissed the action because of the plaintiff's failure to comply with the 90–day written demand requirements of I.C. § 30–1–742. The district court also awarded costs and attorney fees to the defendants, who are the respondents in this appeal. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The district court found that the following facts were largely undisputed. Ron and Bill McCann each were gifted 36.7% of the shares of the corporation in the 1970's. The remaining stock was held by their father, William McCann, Sr. In 1997, Bill began working part time for the corporation. In that same year, William, Sr. passed away and his interest in the corporation transferred to a trust set up to benefit his wife, Gertrude. The trustee, Meisner, was given the power and discretion to redeem shares of stock to provide an income for Gertrude. Following Gertrude's death, the shares were to pass to Bill.

Beginning in the latter part of 1998, the parties' attorneys began working to resolve differences between Ron and the corporation. Among the issues raised by Ron were: the use of corporate funds to pay for estate taxes, an increase in the amount of salary paid to Bill, the failure to seek repayment for a corporate loan, the payment of consulting fees when no services were rendered, the logging of timber belonging to the corporation and the improper characterization of employee payments. The corporation gave financial and property-related information, which Ron was entitled to as a shareholder, to Ron's attorney.

Following a series of letters between the attorneys, a special board of directors meeting was scheduled in August 2000 to address the many issues raised by Ron. Despite the scheduled board of directors meeting, Ron's attorney sent a letter to the corporation's attorney and directors pursuant to I.C. § 30–1–742 on June 9, 2000, demanding immediate action be taken by the corporation on various matters.[1] The corporation's attorney responded, requesting time to inquire into the allegations and prepare a response. Ten days later, however, on June 19, 2000, Ron filed his complaint. The complaint alleged both derivative and individual claims relating to the following causes of action: breach of fiduciary duties, negligence by the directors, conversion of corporate property, self-dealing and conflict of interest transactions. The defendants filed motions to dismiss for failure to comply with the requirements of I.R.C.P. 23(f) and I.C. § 30–1–742. Gary Meisner's motion also asserted that Ron lacked standing to sue him as the trustee. On August 3, 2000, Ron filed a motion to amend his complaint.

A hearing on the motions to dismiss and the motion to amend was held on August 8, 2000. The district court found that a proper

---

1. The matters raised in the June 9 demand letter did not encompass all of the issues that had been raised by Ron since 1998. The letter addressed the loan made to the estate and Gertrude instead of redeeming shares of stock, payments to Gertrude as consulting compensation, improper tax characterization of employee accounts, corporate funds paying for non-corporate work, expenditures for automobile services, corporate vehicles being used for personal use, and logging of the corporate timber property.

demand pursuant to I.C. § 30–1–742 was not made until June 9, 2000. The district court then stayed the action for a period of 90–days from June 9, 2000, and determined that issues not resolved by the board of directors could be litigated after the 90–day period ended. The district court dismissed Gary Meisner as trustee from the case, and awarded to the defendants attorney fees and costs incurred in conjunction with the filing of the action.

The board of directors of the corporation met on August 9, 2000, and addressed a majority of Ron's claims. Another meeting of the board of directors was held on September 6, 2000, to address the remaining claims. At that meeting, Ron was removed as a director by a majority vote of the shareholders.

■ Following the end of the stay, Ron filed a supplemental memorandum in support of his motion to amend. The defendants filed renewed motions to dismiss. After hearing all of the pending motions, the district court issued an opinion denying Ron's motion to amend and ordering that the complaint be dismissed with prejudice.[2] The district court also awarded attorney fees and costs to the defendants. This appeal followed.

## ISSUES PRESENTED ON APPEAL

1. Did the district court err in dismissing Ron's individual causes of action?

2. Did the district court err in dismissing Ron's shareholder derivative causes of action?

3. Did the district court err in denying Ron's motion to amend the complaint?

4. Did the district court err in awarding attorney fees and costs to the defendants?

5. Is either party entitled to an award of attorney fees on this appeal?

**2.** Although the district court's determination that the dismissal would be with prejudice has not been directly challenged on appeal, we conclude that this dismissal would affect only the claims that Ron attempted to pursue in his complaint

## STANDARD OF REVIEW

■ Where a motion to dismiss for failure to state a claim upon which relief can be granted is supported by information outside of the pleadings, the motion is treated as a motion for summary judgment. I.R.C.P. 12(b); *see also Allen v. State ex rel. Dept. of Parks and Recreation*, 136 Idaho 487, 488, 36 P.3d 1275, 1276 (2001). The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c).

■ A district court's decision to allow the amendment of pleadings is reviewed for an abuse of discretion. *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 345, 33 P.3d 816, 819 (2001). To review an exercise of discretion, this Court applies a three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

## DISCUSSION

### I.

### Individual Causes of Action

■ Ron contends that a shareholder in a closely-held corporation can bring a direct action for wrongs committed against the

prior to the dismissal, and would not prevent him from properly asserting new, unresolved claims complying with I.C. § 30–1–742 that may arise following the order of dismissal.

corporation. Ron argues that improper activities, which benefited the majority shareholders to the exclusion of the minority shareholder, should be sufficient for him to bring his individual action. He submits that because he is the only minority shareholder, there is no potential for the multiplicity of suits nor will it prejudice the rights of other shareholders.

The respondents contend that the district court properly exercised its discretion in dismissing Ron's individual claims. They assert that a shareholder may bring an individual action when he has suffered a loss separate and distinct from the other shareholders; however, an individual claim cannot be filed on his behalf for a wrong solely committed against the corporation. The respondents argue that Ron's allegations of self-dealing, negligence, breach of duties, conversion and waste were derivative claims against the corporation.

The district court stated:

Plaintiff can bring an individual action where he has suffered a special injury distinct from that of the other shareholders. [The alleged claims] do not affect Ronald McCann specifically. Individual actions generally include claims to enforce shareholder's rights to inspect books or vote or redeem stock; to compel dividends; to have the corporation dissolved; and to enforce a shareholder's agreement. They generally do not include suits alleging violation of duties by corporate officers, such as negligence, mismanagement, self-dealing, excessive compensation or squeeze outs.

The district court concluded that Ron's individual actions were derivative in nature and therefore he needed to comply with the statutory 90-day written demand requirement, which he failed to do.

■ There is very little Idaho case law concerning individual or direct (derivative) actions. In *Steelman v. Mallory*, 110 Idaho 510, 716 P.2d 1282 (1986), a direct action was allowed where the directors breached their fiduciary duty by usurping a corporate opportunity that could have and would have been performed by the corporation but for a disagreement amongst the directors. *Id.* at

513–14, 716 P.2d at 1285–86. This Court held that in a closely-held corporation, the corporate directors owe a fiduciary duty to one another, to the corporation, and to the shareholders, including the minority shareholders. *Id.* at 513, 716 P.2d at 1285. "As fiduciaries, corporate directors are bound to exercise the utmost good faith in managing the corporation. However, the 'business judgment rule' immunizes the good faith acts of directors when the directors are acting within the exercise of their honest business judgment." *Id.* (citations omitted).

The distinction between individual and derivative actions has been explained by one treatise as follows:

[I]t is generally held that a stockholder may maintain an action in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

19 AM.JUR.2D *Corporations* § 2249, 151 (1986).

A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection....

An action brought by a shareholder is derivative if the gravamen of the complaint is the injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder.

19 AM.JUR.2D *Corporations* § 2250, 151–52 (1986).

The duties that Ron has alleged the directors breached in this case do not appear to be a "special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's

status as a shareholder." Ron's allegations appear to be more that the corporation is "controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection." Accordingly, the nature of this action should be considered a derivative suit. Even if there is some potential injury to Ron, Ron's alleged injuries appear to be dependent on his status as a shareholder, and solely an injury to the corporation but not to him personally as an individual.

This Court upholds the district court's determination that the causes of action alleged by Ron were derivative rather than individual in nature.

## II.

## Derivative Causes of Action

Idaho Code § 30–1–742 provides:

No shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

The district court found that Ron did not make his written demand to the corporation, as contemplated by the statute, until June 9, 2000. The district court found that Ron failed to comply with the statutory prerequisite of I.C. § 30–1–742(2) by filing the complaint ten days later on June 19, 2000, and not allowing the 90–day period following the service of the demand. The district court then stayed the action pursuant to I.C. § 30–1–743 in order to promote judicial economy by allowing the 90–day period to run, and with the hope that the parties would resolve the dispute. Following the stay, Ron moved to amend his complaint. The amended complaint sought to add new allegations that had not been raised previously and were not contained in the June 9 demand letter. The district court found that Ron had again attempted to circumvent the 90–day written demand requirement of the statute. The district court ruled that:

because Plaintiff's counsel failed to follow the dictates of I.C. § 30–1–742 for a second time, this Court is forced to use its discretionary authority to dismiss this action with prejudice. Otherwise, the purpose behind Section 30–1–742 *et seq.* will be thwarted, and the shareholders will never be forced to cooperate with each other in the corporate context as anticipated by the statute. This Court believes it is only encouraging controversy by allowing this action to proceed, at the cost of the corporation's and the individual parties' pocketbooks.

Ron disagrees with the district court's decision. He asserts that the demand required by the statute need not be in any particular form and, in some instances, can be inferred from discussions taking place during conferences, but the demand must alert the corporation of the requests of the shareholder. Ron argues that the district court erred in finding that the first demand he made to the corporation was June 9, 2000, despite his numerous oral demands and letters sent to the corporation's attorney prior to June 9. He submits that letters of December 6, 1999, and January 21, 2000, were demands upon the corporation to take action, and the district court erred by finding only the June 9, 2000, letter constituted a proper demand. In reply, the respondents point out there were many defects with Ron's initial letters that prevent them from being considered proper written demand letters. First, they argue that the letters should have been served upon the corporation's directors rather than the corporation's attorney. Second, the respondents assert that the letters did not adequately detail the alleged wrongful corporate conduct or the losses suffered. Finally, they maintain that the letters did not demand that the corporation take suitable action as required by I.C. § 30–1–742.

The sufficiency of the written demand appears to be a question of fact to be determined by the district court. "The demand must be made on the directors in the office at the time the shareholders' derivative action is

commenced." 19 AM.JUR.2D *Corporations* § 2277, 172–73, (1986). "The mere sending of a letter to the president of the corporation or the service upon the corporation's attorney of a demand that the corporation take legal action in connection with a transaction complained of does not meet the demand requirement." *Id.*

The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.

The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

. . . .

The shareholder should allow sufficient time for the directors to act upon the demand before initiating the action. The directors' response must be obtained, if possible. The shareholder must comply with the reasonable requests of the directors in an effort to resolve the problems before commencing an action. Thus, a shareholder may be required to provide additional information to the directors.

Merely bringing the allegations of the complaint to the attention of the corporation's controlling authority does not constitute adequate demand for board action. Moreover, the filing of a derivative complaint is not a sufficient demand.

19 AM.JUR.2D *Corporations* § 2278, 173–74 (1986).

■ The initial letters from Ron are not sufficient to constitute a written demand pursuant to I.C. § 30–1–742. The letters were delivered only to the corporation's attorney; they were not sent to the directors. Fur-

ther, the letters consist of discussions among the parties to resolve issues between the brothers, not necessarily an explicit demand upon the corporation to take suitable action. This Court affirms the district court's finding that the December 6, 1999, and January 21, 2000, letters do not constitute demand letters pursuant to I.C. § 30–1–742.

The letter of June 9, 2000, is a proper written demand upon the corporation. The letter, although written to the corporation's attorney, was also copied to the directors. The alleged wrongful corporate conduct was sufficiently detailed with facts and the letter requests that the corporation take suitable action.

■ Ron also suggests that the complaint he filed was sufficient to be considered a demand under I.C. § 30–1–742, and that the effect of the stay cured any defects in the demand. The complaint is not a sufficient demand under I.C. § 30–1–742. *See e.g. Lucking v. Delano,* 117 F.2d 159, 160 (6th Cir.1941) (applying Federal Rule of Civil Procedure 23(b)). Unless one of the enumerated exceptions applies, a written demand and 90–days must expire before a complaint for a derivative proceeding may be filed. Even if the stay cured the 90–day defect for the issues contained in the June 9 letter, any further allegations not contained in the demand letter would be subject to the statutory demand and waiting period requirements. Ron's additional allegations of corporate misconduct would have to be presented to the directors in a subsequent written demand requesting action be taken on those items, as well, for the proceeding to be justiciable under I.C. § 30–1–742.

■ Ron argues that he is excused from complying with the written demand requirement because the corporation was being irreparably harmed and because the corporation had already previously rejected his requests, which are the two exceptions recited in I.C. § 30–1–742. Ron also asserts that his attempts had been futile in the past. Under these circumstances, Ron contends, he did not need to wait 90–days to commence his suit as provided by the statute.

The district court addressed Ron's arguments, stating:

> The proposed Amended Complaint alleges that written demands under Section 30-1-742 have been futile in the past, and further that the Corporation failed to correct all improper acts since the summer of 1999. There is no futility exception in Idaho's Business Corporations Act. Further, the record does not support this allegation. In fact, the vast majority of Plaintiff's original claims have been resolved by the Corporation; the mere fact that not all were resolved in his favor does not warrant further court intervention under the statutory scheme.

In this case, Ron had made prior attempts to resolve his questions of alleged corporate misconduct. However, none of the attempts proposed that legal action would be taken if the corporate conduct were not corrected. Although a few of Ron's requests had been rejected by the corporation in the past, the record does not appear to support a conclusion that demand should be excused because of those few rejections. Furthermore, there is nothing in the record to suggest that irreparable injury would result by waiting for the expiration of the 90–day period.

Nor are we persuaded that the futility exception previously recognized by the courts in Idaho with regard to shareholder derivative actions, applies in this case. The futility exception arose by case law under the court rule addressing such actions. *See* I.R.C.P. 23(f). In 1998, the legislature adopted a comprehensive enactment relating to the rights of parties to shareholder derivative actions as part of the corporations code. *See* 1998 Idaho Sess. Laws, ch. 223, p. 766. This included I.C. § 30-1-742, specifying the conditions under which a shareholder may commence a derivative proceeding.

▆▆▆▆ Neither of the two exceptions to the demand requirement set forth in I.C. § 30-1-742 encompasses the doctrine of futility. "Statutes are construed under the assumption that the legislature was aware of all other statutes and legal precedence at the time the statute was passed." *Druffel v. State, Dept. of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002). "The legislature is

presumed not to intend to overturn long established principles of law unless an intention to do so plainly appears by express declaration or the language employed admits of no other reasonable construction." *George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).

▆▆▆▆ Accordingly, we presume the legislature was aware of the common law futility exception when the statute including two exceptions to the demand requirement was adopted, but the legislature chose not to add a provision expressing the concept of futility as an exception. This appears to be a clear demonstration of the legislature's intent to no longer recognize "futility" as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action. This Court affirms the district court's decision that written demand was not excused in this case and holds that the futility exception no longer applies to the demand requirement as set forth in the statute.

▆▆▆▆ Idaho Code § 30-1-744 governs the dismissal of derivative proceedings. This section provides that a proceeding shall be dismissed by the court on motion by the corporation if a majority vote of a quorum of independent directors present at a meeting of the board of directors, or a majority vote of a specifically defined committee, has determined in good faith after conducting a reasonable inquiry that the maintenance of the derivative proceeding is not in the best interests of the corporation.

At the initial board of directors meeting on August 9, 2000, the board appointed directors Meisner and Durkin to review Bill's compensation and the corporate dividends. The board of directors began to review the issues raised in Ron's demand letter at the August meeting. The directors needed clarification on some of the issues and requested information from Ron's attorney. At the September board meeting, the directors continued addressing the issues raised by the letter and clarified that they had addressed each claim contained in the demand letter, with the exception of the issues upon which the board had requested information from Ron but had

not received. The board then decided it would not be in the best interest of the corporation to continue the derivative action.

Ron challenges the independence and good faith of the directors. However, there is nothing in the record to show that the directors lacked independence or good faith while making the determinations. The record shows that issues surrounding Bill's compensation and the issuance of dividends were dealt with solely by the two non-McCann directors. Further, although Gary Meisner and Bill were long-time friends, this does not automatically taint Meisner's ability to be independent or to act in good faith in discharging his responsibilities.

The June 9, 2000, letter was the only proper demand served upon the corporation. Consequently, this Court upholds the district court's decision that the derivative action failed to conform to the requirements of the statute and that the action should be dismissed.

### III.

### Motion to Amend Complaint

 Ron argues that the district court's denial of his motion to amend was clearly erroneous for several reasons. He asserts that he had previously raised many of the claims the district court found were new and that failed to comply with the 90–day written demand requirement. He contends that the "new" claims were based on the same facts that were alleged in the initial complaint. Additionally, Ron asserts that the district court erred in determining that a majority of his claims had been resolved following the stay.

The respondents contend that the district court properly perceived this motion as one left to its discretion and properly exercised its discretion in denying the motion. The respondents note that the district court considered Ron's suggestions of bad faith, repeated failure to cure deficiencies, undue prejudice and futility with regard to the proposed amended complaint

 A trial court's decision to deny an amendment to pleadings is reviewed by this

Court under an abuse of discretion standard. *See Cook v. State Dep't of Transp.*, 133 Idaho 288, 296, 985 P.2d 1150, 1158 (1999). Rule 15(a) of the Idaho Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999).

In this case, the district court properly recognized the motion to amend as a matter submitted to its discretion. At the time the district court stayed the case, the judge indicated that he would permit amendment of the complaint in the future to consider properly-raised claims not resolved by this procedure. When the amended complaint sought to add new causes of action, none of which complied with I.C. § 30–1–742(2), the district court acted within the boundaries of its discretion by denying the motion. The district court articulated its rationale in an opinion that showed it had reached its decision by an exercise of reason.

Given the circumstances, this Court holds that the district court did not abuse its discretion by denying the motion to amend.

### IV.

### Attorney Fees and Costs in the District Court

 Ron argues that the district court erred in awarding fees and costs because the record supports that he had a reasonable cause to commence and maintain this action.

The respondents argue that the district court properly awarded fees. The respondents point out that the district court awarded fees pursuant to I.C. § 30–1–746(2) after determining that the respondents were the prevailing party, and the district court did not award all of the fees sought by the

**238**

parties. The respondents further note that the district court found that Ron maintained the action without reasonable cause and that the filing of the motion to amend by raising new claims was improper.

The district court awarded attorney fees under I.C. § 30–1–746(2) after finding that this action was filed without reasonable cause in light of I.C. § 30–1–742.

Idaho Code § 30–1–746 provides in relevant part:

> On termination of the derivative proceeding the court may:
>
> (2) Order the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose.

 An award of attorney fees under this statute is discretionary and should be subject to review and vacated only upon a showing of an abuse of discretion. Here, an abuse of discretion has not been shown. The district court found that Ron repeatedly sought to circumvent the requirements of I.C. § 30–1–742. The district court even stayed the proceeding in an attempt to allow the requirements to be satisfied. The district court concluded that "[h]ad Plaintiff's counsel not proceeded to file a motion for an amended complaint adding new claims, having previously been warned that the statute required the corporation have ninety days to first consider the claims before prosecuting the same claims in court, this Court would not have been compelled to award fees and costs to the defendants. The statute and the facts authorize such an award to each of the defendants as the prevailing party in this action."

After reviewing the circumstances of the case, this Court holds that the district court did not abuse its discretion in awarding fees to the respondents under I.C. § 30–1–746(2).

## V.

### Attorney Fees and Costs on Appeal

Both parties seek an award of attorney fees for this appeal. The appellant, however, is not the prevailing party. The respondents argue that they should be awarded their costs and attorney fees for defending this appeal under I.C. § 30–1–746 because the appeal did not present any meaningful issue on a question of law or show that the district court misapplied the law relating to the requirements of demand under I.C. § 30–1–742, but simply invited this Court to second-guess the district court on questions of fact. On review, we agree that there was no misapplication of the law by the district court, and that the thrust of the arguments presented by the appellant merely seek reconsideration of the factual determinations and the exercise of discretion made by the district court. Because we uphold the decision of the district court dismissing the action and awarding attorney fees to the defendants pursuant to I.C. § 30–1–746(2), we also award attorney fees to the respondents on appeal, in an amount to be determined in accord with the provisions of I.A.R. 41.

### CONCLUSION

The decision of the district court is affirmed. Attorney fees and costs on appeal are awarded to respondents.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.