155 P.3d 1166

Tyler MANNOS, an individual; Tyler Mannos on behalf of Idaho Peterbuilt, Inc., as a 30% shareholder, Plaintiff–Appellant,

v.

Todd MOSS; Terry Lawrence; and Lloyd Lawrence; individuals; individuals Does I–X; and Corporation Does I–X, Defendants–Respondents.

Terry Lawrence, individually and on behalf of Idaho Peterbuilt, Inc., an Idaho corporation, Counterplaintiff,

v.

Tyler Mannos, Counter defendant.

Todd Moss, Counterclaimant,

v.

Tyler Mannos, Counter defendant.

Terry Lawrence and Lloyd Lawrence, husband and wife, Cross Claimants,

v.

Todd Moss, Cross Defendant.

No. 31958.

Supreme Court of Idaho, Boise, January 2007 Term.

Feb. 22, 2007.

930

Manuel Murdoch, Blackfoot, and Callister & Reynolds, Las Vegas, for appellants.

R. Duane Frizell argued. Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, for respondents Terry Lawrence and Lloyd Lawrence. Neil D. McFeeley argued.

Patrick D. Furey, Boise, for respondent Todd Moss. Patrick D. Furey argued.

JONES, Justice.

This case derives from the sale of stock in Idaho Peterbilt, Inc. ("Peterbilt") and GRM Leasing, Inc. ("GRM"). The stock purchaser, appellant Tyler Mannos, sued the sellers, Terry Lawrence and Lloyd Lawrence, and a third party, Todd Moss (collectively "the defendants"), alleging eleven causes of action after Peterbilt, Inc. proved economically unviable. The district court granted summary judgment in favor of the defendants, dismissing all of Mannos' claims. We affirm in part and vacate and remand in part.

I.

Peterbilt was a closely-held Idaho corporation primarily engaged in the commercial sale, lease, and repair of Peterbilt trucks and truck-related products. Prior to July 5, 2001, Terry owned seventy percent of Peterbilt's outstanding stock, and Todd owned the remaining thirty percent. GRM is or was a closely-held Idaho corporation primarily engaged in the leasing of equipment and trucks to businesses and consumers. Prior to July 5, 2001, Terry, Lloyd, and Todd each owned a one-third ownership interest in the company. Beginning in October 2000, Todd and Mannos started discussing the possibility of changing Peterbilt's ownership structure. Specifically, Todd inquired whether Mannos would be interested in purchasing thirty percent of Peterbilt from Terry and becoming Peterbilt's co-owner and operating manager. At the time, as Terry later testified, she was interested in selling all of her holdings in Peterbilt for the purpose of converting her relatively illiquid stock into cash. Todd proposed that if Mannos purchased thirty percent of Peterbilt from Terry, he would purchase her remaining shares over the next five years, and the two would become co-owners of the corporation.

Sometime in January 2001, Todd provided Mannos with Peterbilt's financial statement from the previous year, along with supporting documentation and records, and granted Mannos access to the premises to conduct physical inspections. The parties dispute whether the financial statement and supporting documentation accurately represented the financial condition of Peterbilt at the time. On July 5, 2001, Mannos and Terry executed a stock purchase agreement under which Mannos agreed to purchase thirty percent of Peterbilt's outstanding stock from Terry for $499,200. Todd subsequently purchased the remainder of Terry's outstanding stock. On that same day, Mannos executed a separate stock purchase agreement with Lloyd, wherein he purchased a one-third interest in GRM. Shortly after making his investment, Mannos became Peterbilt's operating manager. By June 2003, Peterbilt was in dire financial straits and Mannos and Todd sold Peterbilt's assets in an effort to salvage any value left in the company. Although some assets of GRM were sold, others were retained to continue some business operations.

Mannos subsequently filed suit against Todd and the Lawrences, asserting: (1) breach of fiduciary duty to Mannos; (2) breach of fiduciary duty to Peterbilt; (3) fraud; (4) breach of contract; (5) unjust enrichment; (6) civil conspiracy; (7) negligence; (8) racketeering; (9) declaratory relief; (10) violation of the Idaho Securities Act; and (11) indemnification. In response, Todd filed a counterclaim against Mannos for breach of the duty of care. The Lawrences filed a counterclaim against Mannos, as well as a third party complaint against Todd. The Lawrences then filed a motion for partial summary judgment, as did Todd. The district

court granted summary judgment in favor of all the defendants, dismissing all eleven of Mannos' causes of action. The district court did not make any determination as to Todd's counterclaim, the Lawrences' counterclaim, or the Lawrences' third party claims against Todd. Instead, the district court included an Idaho Rule of Civil Procedure 54(b) certificate with its judgment, which provided that "there is no just reason for delay of the entry of a final judgment and . . . the above Judgment shall be a final judgment from which an appeal may be taken." Mannos appeals from this judgment.

## II.

The question presented in this case is whether the district court properly dismissed all eleven of Mannos' claims on summary judgment. With respect to Mannos' fraud and Idaho Securities Act claims pertaining to the Peterbilt transaction, we vacate the judgment and remand for further proceedings. With respect to Mannos' remaining claims, we affirm the district court's grant of summary judgment.

## A.

■ When reviewing a summary judgment order, this Court applies the same standard as the district court. *Foster v. Traul*, 141 Idaho 890, 892, 120 P.3d 278, 280 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). This Court will construe all disputed facts liberally in favor of the non-moving party, and all reasonable inferences will be drawn in favor of the non-moving party. *Hayward v. Jack's Pharmacy Inc.*, 141 Idaho 622, 625, 115 P.3d 713, 716 (2005). If the facts are such that reasonable persons could reach differing results, summary judgment is improper. *Id.*

## B.

### i.

Mannos claims that the defendants committed fraud when they provided him with misleading financial information and made certain misrepresentations to induce him to invest in Peterbilt. The defendants dispute both contentions, but argue that, even if certain misrepresentations were made, Mannos' fraud claim is unviable because he failed to prove justifiable reliance. The district court agreed and dismissed Mannos' fraud claim after determining that Mannos failed to prove the element of justifiable reliance.

■ To successfully bring an action for fraud, a plaintiff must establish the existence of the following elements: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Trees v. Kersey*, 138 Idaho 3, 10, 56 P.3d 765, 772 (2002). Idaho Rule of Civil Procedure 56(c) governs the grant of summary judgment on the issue of fraud. *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 368 fn. 1, 109 P.3d 1104, 1110 fn. 1 (2005).

The district court relied upon this Court's holding in *Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (1980) to establish that Mannos did not justifiably rely upon the defendant's alleged misrepresentations. In *Faw*, we held that "when a purchaser is given the opportunity to conduct an independent investigation of the records and does so, it is generally held that he is not entitled to rely on alleged misrepresentations of the seller." *Id.* at 389, 613 P.2d at 1340. That Mannos conducted his own evaluation of Peterbilt's books and records in this case is not at issue; Mannos expressly warranted and represented in the stock purchase agreement that "he has had a reasonable and adequate opportunity to review the books and records of Idaho Peterbilt, Inc., and to consult with such persons as he deems necessary or appropriate." Mannos argues that, notwithstanding his warranty, the district court erred in light of

this Court's holding in *Watson v. Weick,* 141 Idaho 500, 112 P.3d 788 (2005) because the books and records the defendants provided did not disclose the alleged misrepresentations. In *Watson,* the plaintiffs sued to recover on a promissory note signed as part of the sale of a business. *Id.* at 504, 112 P.3d at 792. The defendants counterclaimed, alleging that the plaintiffs fraudulently provided financial data misrepresenting the true financial condition of the company. *Id.* at 506, 112 P.3d at 794. Relying on *Faw,* the district court in *Watson* dismissed the fraud claim on the ground that the party asserting fraud was given the opportunity to conduct an independent investigation of the records and did so, negating any justifiable reliance on the alleged misrepresentations. *Id.* at 506, 112 P.3d at 794. On appeal, we held that the district court erred in granting summary judgment because it failed to consider whether the records actually reviewed contained information that disclosed the inaccuracy of the alleged misrepresentations. *Id.* at 507, 112 P.3d at 795.

■ This case is factually similar to *Watson.* Prior to Mannos' investment in Peterbilt, Todd provided Mannos with Peterbilt's financial statement for the previous year along with supporting documentation and records. The financial statement disclosed a net worth of $883,389. Mannos contends that the financial statement did not accurately reflect Peterbilt's financial condition at the time because another financial statement covering the same period was subsequently discovered, showing a net worth at $775,848. He alleges further that the defendants took several measures to falsely inflate the value of the company, including: (1) failing to disclose Peterbilt's obligation to pay Helmut Moss $7,000 per month, plus automobile payments and insurance premiums, for the remainder of Helmut's life; (2) listing $100,000 worth of non-existent inventory as an asset; and (3) listing non-warranty, unpayable repairs as an account receivable. Mannos asserts that the books and records he was provided did not disclose the above-mentioned discrepancies and that the district court did not evaluate whether those books and records would have revealed the alleged

misrepresentations or omissions in the financial statement.

At hearing on appeal, the defendants conceded that the financial statement they provided to Mannos prior to his investment did not disclose Peterbilt's obligation to Helmut. Instead, they contend that Peterbilt's obligation to Helmut was disclosed in the books and records provided to Mannos, and that Mannos had an adequate opportunity to review those books. However, when asked where the obligation to Helmut was disclosed in the books and records, the defendants could not point to anything in the record containing such a disclosure. While the defendants offered a plausible explanation of the obligation at argument, we will not guess whether the obligation was or was not disclosed in the books and records. The defendants also offered a reasonable explanation for the discrepancy between the two financial statements. However, it is disputed between the parties as to whether information that would have explained the discrepancy was made available to Mannos prior to completion of the Peterbilt transaction. The other misrepresentations alleged by Mannos, while not particularly compelling in and of themselves, added to the general confusion as to whether financial information was made available that would have brought these matters to light. Because the district court did not consider whether the books and records provided to Mannos would have revealed the discrepancies allegedly contained in the financial statement, the district court erred in granting summary judgment on this claim as it pertains to the Peterbilt transaction. No credible evidence of fraud was presented by Mannos with respect to the GRM transaction so that part of the summary judgment order will not be disturbed.

Mannos also alleges that the defendants made certain false representations apart from those contained in the financial statement that induced him into investing in Peterbilt. In particular, Mannos testified that prior to his investment in Peterbilt, Todd represented to him that Terry would reinvest Mannos' purchase money back into Peterbilt for the purpose of expanding its operation into Twin Falls. There is little substance to

support this last ground. At hearing, Mannos' attorneys were unable to point to any terms of such an agreement, such as how the money would be funneled back into the company, whether through gift to the corporation, investment in stock, or a loan to the corporation. However, the fact that this particular ground lacks substance does not mean that there is no genuine issue of material fact regarding Mannos' fraud claim as a whole. Mannos' other grounds are enough to overcome summary judgment on the Peterbilt transaction.

### ii.

Mannos contend that the defendants violated the general fraud provision of the Idaho Securities Act when they provided him with a fraudulent financial statement and made certain misrepresentations to induce him to invest in Peterbilt. Idaho Code § 30–14–501 states that in connection with the sale of a security, it is unlawful to:

(1) To employ a device, scheme, or artifice to defraud;

(2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Idaho Code § 30–14–509 provides for civil liability of a seller for selling in violation of Idaho Code § 30–14–501. Mannos' argument under this claim, as well as the defendants' defenses, mirror their arguments and defenses with respect to the common law fraud claim. Additionally, the district court's rationale for dismissing this claim was identical to that of its decision to dismiss Mannos' fraud claim. For the reasons we vacated and remanded Mannos' fraud claim, we vacate and remand Mannos' claim under the Idaho Securities Act with respect only to the Peterbilt transaction.

### C.

### i.

Mannos alleges that the defendants breached numerous fiduciary duties owed to him in connection with the sale and operation of Peterbilt. The defendants assert that they owed no fiduciary duty to Mannos before he became a shareholder in the company, which is when the majority of the alleged acts of misconduct occurred. "To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). In a closely-held corporation, the corporate directors owe a fiduciary duty to one another, to the corporation, and to the shareholders. *McCann v. McCann*, 138 Idaho 228, 233, 61 P.3d 585, 590 (2002). Prior to his investment in Peterbilt, Mannos was neither a corporate director nor a shareholder, and thus the defendants owed him no fiduciary duty at that time.

Mannos also alleges that the defendants breached numerous fiduciary duties owed to him after he become a shareholder; namely that the defendants converted Peterbilt assets for certain personal uses. Mannos' attempt to bring these claims as a direct action is misplaced. Any claim that Mannos has regarding the defendants depletion of corporate assets can only be pursued by him through a derivative action. *See McCann*, 138 Idaho at 233, 61 P.3d at 590 (a stockholder may bring a direct action for an injury directly affecting him; however, if the gravamen of the complaint is injury to the corporation's assets or to the whole body of its stock, then the shareholder's action is derivative). Thus, the district court did not err in dismissing this claim.

### ii.

Mannos, as a shareholder acting on Peterbilt's behalf, claims that the defendants breached fiduciary duties owed to Peterbilt. The defendants assert that Mannos did not comply with the statutory requirements for instituting a derivative action. Idaho Code § 30–1–742 provides that a shareholder may

not commence a derivative proceeding until he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action. Mannos did not make a written demand upon Peterbilt before he commenced this derivative action. Nevertheless, Mannos contends that the district court's grant of summary judgment on this issue should be reversed because (1) he made a written demand upon Peterbilt subsequent to the district court's entry of judgment, and (2) a written demand would be futile because all of Peterbilt's officers, directors, and shareholders, aside from himself, are defendants in this suit.

■ Any written demand Mannos may have made post-summary judgment is inconsequential because Idaho Code § 30–1–742 requires the demand be made ninety days before the commencement of the derivative action. Mannos' futility argument is also unavailing. This Court has determined that the legislative intent in enacting Idaho Code § 30–1–742 was "to no longer recognize 'futility' as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action." *McCann*, 138 Idaho at 236, 61 P.3d at 593. Because no genuine issue of fact exists regarding whether Mannos made a written demand upon Peterbilt before commencing this derivative action, the district court did not err in granting summary judgment in favor of the defendants with respect to this claim.

### iii.

Mannos contends that the defendants breached the stock purchase agreement when Terry failed to reinvest the proceeds from the sale of Peterbilt stock back into the company. As evidence of his contention, Mannos relies on a conversation with Todd during which Todd allegedly represented that Terry intended to reinvest the purchase price in Peterbilt, as well as a letter from Peterbilt to its franchisor explaining Peterbilt's desire to change ownership and expand into Twin Falls. The defendants assert that neither the stock purchase agreement, nor any other agreement provided by Mannos, contains language to the effect that Terry

would reinvest the purchase price into Peterbilt.

The evidence in this case establishes that Mannos did not enter into a contract with Terry requiring her to reinvest the purchase price into the corporation. Mannos does not allege that he ever had a conversation with Terry regarding the subject at any time. He only alleged that he discussed the idea with Todd. Further, no evidence exists in the record concerning the terms of the alleged agreement, for example there is no indication as to how Terry would funnel the money back into the company, whether through gift to the corporation, investment in stock, or loan to the corporation. Since no evidence of any agreement between Mannos and Terry has been produced stating that Terry would provide capital to Peterbilt, no issue of material fact exists as to whether Terry breached the stock purchase agreement by failing to reinvest the purchase price into Peterbilt.

### iv.

■ Mannos contends that Terry and Todd have been unjustly enriched by *inter alia* receiving $499,200 for the Peterbilt stock and converting Peterbilt assets to personal use. Unjust enrichment is an equitable claim and "[e]quitable claims will not be considered when an adequate legal remedy is available." *Iron Eagle Development, L.L.C. v. Quality Design Systems, Inc.*, 138 Idaho 487, 492, 65 P.3d 509, 514 (2003). In *Iron Eagle*, we held that where parties have entered into a contract, a claim for unjust enrichment will be precluded. *Id.* Thus, with respect to Terry, with whom Mannos entered into an express contract, Mannos' claim for unjust enrichment is unviable. With regard to Todd, Mannos' unjust enrichment claim is unviable because he has the ability to pursue other legal remedies, including a claim for fraud.

### v.

■ Mannos alleges that the defendants' attempts to defraud him constituted a civil conspiracy. The district court held, after dismissing Mannos' fraud claim as a preliminary matter, that Mannos' civil conspiracy claim failed because Idaho does not allow an

independent cause of action for civil conspiracy. We have held that:

> A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner. Civil conspiracy is not, by itself, a claim for relief. The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.

*McPheters v. Maile,* 138 Idaho 391, 395, 64 P.3d 317, 321 (2003). An agreement is the foundation of a conspiracy charge and there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred. *See Calvin v. Salmon River Sheep Ranch,* 104 Idaho 301, 304, 658 P.2d 972, 975 (1983); *Heine v. School Dist. No. 271,* 94 Idaho 85, 87, 481 P.2d 316, 318 (1971). Mannos argues that the fraudulent acts the defendants engaged in to induce him to invest in Peterbilt constitute the underlying civil wrong in this case. However, Mannos has failed to offer, and the records fails to contain, any specific evidence regarding an alleged agreement or plan among the defendants to defraud him. As a result, the district court did not err in granting summary judgment on this charge.

### vi.

█ Mannos contends that the defendants negligently misrepresented Peterbilt's financial condition prior to his investment, and that this Court should extend the tort of negligent misrepresentation to include "misrepresentations made by business persons in basic accounting documents, such as financial statements." In *Duffin v. Idaho Crop Imp. Ass'n,* 126 Idaho 1002, 1010, 895 P.2d 1195, 1203 (1995), this Court strictly and narrowly confined the tort of negligent misrepresentation to professional relationships involving an accountant. This case does not involve a professional accounting relationship; rather, it involves a business relationship between a purchaser and a seller. The district court did not err in granting summary judgment on this claim.

### vii.

Mannos alleges that Terry and Todd engaged in racketeering by producing a fraudulent financial statement misrepresenting the value of Peterbilt and using it to defraud him as well as its franchisor, Peterbilt of North America. The defendants argue that Mannos' racketeering claim was improperly pleaded and unsupported by evidence. The district court granted summary judgment on this claim, holding that Mannos did not establish a pattern of racketeering because "Mannos allege[d] only one incident of racketeering: [Todd] and [Terry's] intent to defraud Mannos of his investment in Peterbilt."

█ "Racketeering" means any act chargeable under the enumerated list of predicate acts in Idaho Code § 18–7803(a)(1)–(21). Idaho Code § 18–7804(c) provides:

> It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity. Whoever violates the provisions of this subsection is guilty of a felony.

Thus, to succeed on his racketeering claim, Mannos must prove both the existence of an "enterprise" and a connected "pattern of racketeering activity." *See State v. Nunez,* 133 Idaho 13, 17, 981 P.2d 738, 742 (1999). An "enterprise" is defined as "any sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or any group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities." I.C. § 18–7803(c). A "pattern of racketeering" is defined as:

> engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one (1) of such incidents occurred after the effective date of this act and that the last of such inci-

dents occurred within five (5) years after a prior incident of racketeering conduct. I.C. § 18–7803(d). A single scheme may be sufficient to establish a pattern of racketeering if the plaintiff establishes "that the predicate acts themselves amount to, or constitute a threat of, *continuing* racketeering activity." *Spence v. Howell,* 126 Idaho 763, 775, 890 P.2d 714, 726 (1995).

Of the enumerated list of predicate acts constituting racketeering, Mannos alleges in his amended complaint that Terry and Todd engaged in three. First, he purports that the Terry and Todd engaged in theft by false promise as defined in Idaho Code § 18–2403(2)(d)(1) by failing to reinvest the purchase price of the stock after agreeing to do so. I.C. § 18–7803(a)(10). Second, Mannos asserts that the Terry and Todd falsified corporate books as defined in Idaho Code § 18–1905 by falsely inflating the value of Peterbilt to induce him to invest. I.C. § 18–7803(a)(16). Third, Mannos asserts that Terry and Todd knowingly published a fraudulent written report as defined in Idaho Code § 18–1906 by providing him with a fraudulent financial statement. I.C. § 18–7803(a)(16).

■ In his effort to establish the existence of an enterprise, Mannos' amended complaint alleges "[t]hat on or about January 2001, [Todd] and [Terry] set about on a pattern of racketeering by engaging in at least two (2) incidents of racketeering," thus implying that Todd and Terry comprise the enterprise—i.e., a group of individuals associated in fact. I.C. § 18–7803(c). However, Mannos never alleged, nor produced any evidence establishing, that Todd and Terry associated or agreed to engage in any of the predicate acts, nor that they shared a common purpose to engage in a predicate act. *See U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246, 254 (1981) (U.S. Supreme Court in interpreting the RICO statutes, stated that "[t]he enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.") As a result, the amended complaint did not allege the existence of an enterprise sufficient to satisfy the requirements of Idaho Code § 18–7804(c). The district court's dismissal of this claim is affirmed.

### viii.

■ Mannos requests declaratory relief against Terry and Todd with respect to gaining access to the corporate books and records of Peterbilt and GRM, as well as an accounting of the revenue and expenditures of GRM and Peterbilt for the past two years. Mannos conceded at the summary judgment hearing that his request for declaratory relief had been granted prior to the hearing.[1] Thus, the issue of declaratory relief not been preserved for appeal, and this Court need not discuss the issue further. *State v. Miller,* 130 Idaho 550, 553, 944 P.2d 147, 150 (Ct.App.1997); *See Palmer v. Dermitt,* 102 Idaho 591, 595, 635 P.2d 955, 959 (1981)

### ix.

■ Mannos seeks indemnification for back sales taxes that have not been paid to the Idaho State Tax Commission in the event that he becomes liable for those taxes. Mannos is seemingly asking this Court to issue an advisory opinion on this claim because there is no indication that the Idaho State Tax Commission has dunned Mannos for back taxes. Ripeness is a fundamental prerequisite to invoke this Court's jurisdiction—a harm must be sufficiently matured to warrant judicial intervention. *Noh v. Cenarrusa,* 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002). The ripeness doctrine requires a "plaintiff to prove 1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Id.* Mannos' indemnification claim is not ripe because there is no present need for adjudication. The district court's dismissal of Mannos' request for indemnification is affirmed.

### D.

All parties request attorney fees on appeal pursuant to Idaho Code § 12–120(3), which

---

1. At the summary judgment hearing, Mannos' counsel stated "the dec. relief, which has now been satisfied by the accounting that counsel has graciously provided and we appreciate that."

compels an award of attorney fees to the prevailing party in any civil action to recover on a "contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction." Since each party only prevailed in part on appeal, their requests for attorney fees pursuant to Idaho Code § 12–120(3) are denied.

Mannos and the Lawrences additionally request attorney fees pursuant to Idaho Code § 12–121. "An award of attorney fees under Idaho Code § 12–121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003). In this case, the parties' requests for fees are denied because no grounds exist for finding that any party acted frivolously or unreasonably in this matter.

The Lawrences request attorney fees pursuant to Idaho Code § 30–1–746(2), which provides that a court may choose to award attorney fees upon the termination of a derivative suit where "the proceeding was commenced or maintained without reasonable cause or for an improper purpose." Having made no pre-litigation demand, as specifically required by Idaho Code § 30–1–742, Mannos' derivative suit was without reasonable cause. Thus, the Lawrences are awarded their attorney fees for defending specifically against that claim.

Last, the Lawrences request attorney fees pursuant to the stock purchase agreement itself. The stock purchase agreement contains a provision regarding attorney fees, which provides that "[i]f any party to this Agreement initiates an action against the one or more of the others to enforce any of the terms hereof . . . the prevailing party in such action shall, in addition to all other remedies, be entitled to recover reasonable attorney fees." Since neither party was seeking enforcement of the agreement and also because both parties prevailed in part on appeal, their request is denied.

## III.

The decision of the district court is affirmed with respect to the following claims: breach of fiduciary duty to Mannos, breach of fiduciary duty to Peterbilt, breach of contract, unjust enrichment, civil conspiracy, negligence, racketeering, declaratory relief, indemnification and any fraud and Idaho Securities Act claims pertaining to the GRM transaction. The decision of the district court will be vacated and remanded with respect to the fraud and Idaho Securities Act claims in the Peterbilt transaction. The Lawrences are awarded their attorney fees on appeal for defending the derivative claim. Otherwise, no fees or costs are awarded.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and KIDWELL, Pro Tem, concur.