J. JONES, J.,
specially concurring.
I concur in the Court’s opinion because, even after four tries, the plaintiff was unable to adequately plead that he was excused from the requirement of making demand upon the board of directors to take remedial action. Several aspects of the plaintiffs case, particularly the timing aspects, present concerns that deserve mention.
It must first be acknowledged that shareholder derivative actions provide a useful tool for redress where corporate management wastes corporate assets or otherwise harms the interests of the corporation. However, the remedy is designed for sparing use and various mechanisms have been put in place to winnow out cases where shareholder complaints lack substance. In order to pursue a ease, the shareholder must allege particularized facts that management engaged in conduct detrimental to the corporation, that the shareholder owned stock in the corporation at the time of such conduct, that the shareholder made demand upon the directors to take remedial action, and that no such action was taken. While Orrock pointed to conduct by certain management personnel that was clearly detrimental to Micron — the price-fixing which resulted in a number of civil damage actions being filed against Micron — he failed to state any facts that would (1) indicate the defendant directors had sufficient contemporaneous knowledge of the price-fixing activity to do anything about it before it ended, or (2) indicate the directors took no investigative or remedial action thereafter. None of the four versions of the complaint say what, if any, action Orrock took between June of 2002, when it became generally known the Department of Justice (DOJ) was investigating allegations that Micron had participated in a price-fixing conspiracy, and March of 2006, when Orrock filed his initial complaint.
According to Orrock’s third amended complaint, when it became known in June of 2002 that the DOJ was investigating Micron’s possible involvement in fixing the price of DRAM chips, there was “no doubt” the defendant directors were aware that Micron was likely involved in the DRAM price-fixing conspiracy. He alleges that, notwithstanding such awareness, the directors did nothing to investigate or pursue remedial action. It would seem that the price-fixing was over and done with by the time the directors should have become aware of it, based on Orrock’s allegations, but at that point the directors could do nothing to put a stop to it. The horse had escaped the barn. The only course of action available to the directors at that time was to look into the facts, find out what management personnel may have done, and, if in the best interest of the company at *620 that point, pursue remedial action against them. The directors had a responsibility to investigate once the DOJ inquiry became known but Orrock provides nothing, other than speculation, to show that they did not do so. He does not allege in any of the four versions of his complaint that he sought to obtain information from the corporation, to examine corporate records, or to otherwise determine what, if anything, the corporation was doing or had done. One might expect that a concerned shareholder, reading the news articles generated by the DOJ investigation, would have taken some action or demanded that the board of directors investigate and attempt to rectify the wrongdoing sometime earlier than almost four years later, when Orrock filed his initial complaint. If Orrock was, indeed, a concerned shareholder between June 2002 and March 2006, it would not have taken a great deal of effort to write up a summary of the news accounts and send it to the board of directors to demand remedial action.
Making a demand pursuant to I.R.C.P. 23(f) is not an extremely onerous undertaking. As we have explained:
The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charge and conclusions.
The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.
McCann v. McCann, 138 Idaho 228, 235, 61 P.3d 585, 592 (2002) (quoting 19 Am.Jur.2d Corporations § 2278, 173-74 (1986)).
The Delaware Supreme Court explains the purpose of making such a demand:
The demand requirement serves a salutary purpose. First, by requiring exhaustion of intracorporate remedies, the demand requirement invokes a species of alternative dispute resolution procedure which might avoid litigation altogether. Second, if litigation is beneficial, the corporation can control the proceedings. Third, if demand is excused or wrongfully refused, the stockholder will normally control the proceedings.
The jurisprudence of Aronson [v. Lewis, 473 A.2d 805 (Del.1984) ] and its progeny is designed to create a balanced environment which will: (1) on the one hand, deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms; and (2) on the other hand, permit suit by a stockholder who is able to articulate particularized facts showing that there is a reasonable doubt either that (a) a majority of the board is independent for purposes of responding to the demand, or (b) the underlying transaction is protected by the business judgment rule.
Brehm v. Eisner, 746 A.2d 244, 255 (Del.2000) (quoting Grimes v. Donald, 673 A.2d 1207, 1216-17 (Del.1996)).
So, the demand is necessary in order to give the board of directors the opportunity to do the right thing. There is no indication as to what kept Orrock from making a demand, even at the late date he decided to take action against Micron’s management. In order to survive a motion to dismiss, it was Orroek’s obligation to particularly allege the efforts he made to obtain the action which he desired from the directors and the reasons for his failure to obtain the action. I.R.C.P. 23(f). While he cited articles that appeared in the media and speculated about what the board may or may not have done, he did not allege he took any action whatsoever to find out what the facts were or to get the directors to do something about it.
The question also arises as to what action the directors might have taken when it became known that corporate management personnel had been involved in the DRAM price-fixing conspiracy. Investigation by the di *621 rectors was obviously required; their fiduciary obligations would have dictated that they search out the facts. The complaint contains no fact-based allegation showing they failed to do so. Orrock’s complaint indicates that Micron suffered substantial damage because of the dozens of civil anti-trust lawsuits brought against it. No doubt that is so. Orrock’s complaint assumes that the only remedial action the directors could have taken was to file suit against corporate management personnel who took part in the price-fixing conspiracy. However, the directors may have concluded that taking action against the responsible management personnel would have aggravated the situation, providing additional fodder to those seeking anti-trust damages against the company. In other words, the best strategy to protect Micron’s interests, after the misconduct became known, may have been to hunker down until the litigation storm blew over. Because Orrock apparently made no effort to find out what the directors may or may not have done to protect the company’s interests and since we are provided with no particularized facts indicating that the directors did absolutely nothing, we can only speculate. With no factual allegations indicating to the contrary, the business judgment rule presumes the directors’ actions were in Micron’s interest.
Another difficulty with the complaint relates to the requirement that a shareholder derivative plaintiff allege he was a shareholder “at the time of the transaction of which the plaintiff complains.” I.R.C.P. 23(f). In his four versions of the complaint, Orrock merely alleges that he “is, and was at times relevant hereto, an owner and holder of Micron common stock.” The complaints define a “Relevant Period” as being February 2001 to the “present”, but do not allege Orrock was a shareholder during that defined period. The actual period in which Orrock appears to allege the defendant directors failed to take action to investigate and remediate the price-fixing was June 2002 to March 2006. It would have been easy enough to allege that this was the time period during which Orrock owned Micron stock. Since a derivative action is only available to a person who was a shareholder at the time of the transaction that is complained of in the complaint, it is not asking too much that the shareholder wishing to pursue a derivative action assert, affirmatively, that he held the stock during that period of time.
Orrock’s failure to affirmatively allege his ownership of Micron stock during the “Relevant Period”, combined with the almost four years that elapsed between disclosure of the DOJ investigation and the filing of the initial complaint, gives the appearance of a Johnnyeome-lately lawsuit where the decision to sue was made only after most of the facts relating to the price-fixing conspiracy had become known and the time to make an effective demand for redress had long passed. Again, without the necessary factual allegations, one can only speculate.
The derivative action provides shareholders a useful and necessary avenue of redress where corporate management acts contrary to the interests of the corporation. However, a shareholder pursuing this course must observe the limitations designed to prevent misuse of the derivative action. Among other things, the shareholder must first give management the opportunity to correct the misconduct, unless excused for some lawful reason. Here, Orrock simply has not made the necessary fact-based allegations, even after three amended versions of the initial complaint, to show that he should be excused from making a demand. Thus, the district court acted properly in dismissing the case.