# IN THE SUPREME COURT OF THE STATE OF IDAHO

REED J. TAYLOR, an individual, )
)
    Plaintiff-Appellant, )
)
v. )
) Docket No. 36130
MICHAEL E. MC NICHOLS, an individual; )
CLEMENTS, BROWN & MC NICHOLS, )
P.A., an Idaho professional corporation; )
JANE DOES I-V, unknown individuals, )
)
    Defendants-Respondents. ) Lewiston, April 2010
———————————————————— )
) 2010 Opinion No. 95
REED J. TAYLOR, )
) Filed: September 3, 2010
    Plaintiff-Appellant, )
) Stephen W. Kenyon, Clerk
v. )
)
GARY D. BABBITT, an individual, D. JOHN )
ASHBY, an individual; PATRICK V. )
COLLINS, an individual; RICHARD A. )
RILEY, an individual; HAWLEY, )
TROXELL, ENNIS & HAWLEY, LLP, an ) Docket No. 36131
Idaho limited liability partnership; JANE )
DOES I-X, unknown individuals. )
)
    Defendants-Respondents. )

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

District court decision, affirmed.

Campbell, Bissell & Kirby and Michael S. Bissell, Spokane, for appellant. Roderick C. Bond argued.

Hepworth, Janis & Brody, Chtd., Boise, for respondents McNichols and Clements, Brown & McNichols, P.A. John J. Janis argued.

Elam & Burke, P.A., Boise, for respondents Babbit, Ashby, Collins Riley and Hawley, Troxell, Ennis & Hawley, LLP. Jeffrey A. Thomson argued.

1

BURDICK, Justice

This case comes before this Court on appeal from the grant of two Idaho Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. Appellant, Reed Taylor alleges that the district court erred in denying his motions to amend his complaints, and erred in failing to properly apply the applicable standards in granting the motions to dismiss under I.R.C.P. 12(b)(6). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises as a result of the separate case of *Taylor v. AIA, et al.*, Nez Perce County Case No. CV07-00208 (Underlying Case), now awaiting hearing before this Court on appeal. In order to properly understand the claims being asserted here, certain aspects of the Underlying Case must be examined. The case at hand has been consolidated on appeal from two separate before the district court, case number CV-08-01763 and case number CV08-01765.

### A. Underlying Case

On January 29, 2007, Reed Taylor (Reed) filed suit against AIA Services Corporation (AIAS), AIA Insurance, Inc. (AIAI)[1], John Taylor, Connie Taylor, Bryan Freeman, and JoLee Duclos. AIAI is a business entity existing under the umbrella of AIAS. When the Underlying Case began John Taylor was the managing director of both corporations and his then wife, Connie Taylor, held a community property interest in the corporations. John Taylor, Freeman, and Duclos were board members of both corporations. After Reed filed suit in the Underlying Case, Michael McNichols, of the law firm Clements, Brown & McNichols, P.A. (CBM), was retained to represent AIAS, AIAI, and John Taylor.

While the lawsuit was still pending, Reed attempted to exercise management authority over the AIA Entities, and the court in the Underlying Case granted a temporary restraining order against Reed on February 27, 2007. On March 8, 2007, the court in the Underlying Case entered a preliminary injunction which prohibited Reed from attempting to act as a manager or board member of AIAI, or from harassing or interfering with the management of AIAI and AIAS.

On March 28, 2007, McNichols filed a motion to withdraw as counsel for AIAI and AIAS, which was granted on April 12, 2007. On May 7, 2007, a notice of appearance on behalf

---

[1] When referred to collectively, AIAS and AIAI will be referenced as the "AIA Entities."

of the AIA Entities was filed by Gary Babbitt and John Ashby, of the law firm Hawley Troxell Ennis & Hawley, LLP (HTEH).

**B.  Current Case**

On August 18, 2008, after the Underlying Case had been through 21 months of motions and hearings – while numerous other motions were pending, and the trial date had been set, but after the district court had granted a Motion for Partial Summary Judgment in favor of Reed as to the AIA Entities being in default on a $6,000,000 promissory note issued to Reed – Reed filed the present actions against McNichols and CBM, who were continuing to serve as counsel for John Taylor (case no. CV08-01765 below), and against Babbit, Ashby, Patrick Collins, Richard Riley,[2] HTEH, and other unspecified attorneys who worked for HTEH on its representation of the AIA Entities (case no. CV08-01763 below).[3]  Reed asserted claims against Respondents for: (1) aiding and abetting or assisting others in the commission of tortious acts in the Underlying Case; (2) conversion and misappropriation of the AIA Entities' corporate assets; (3) violations of Idaho's Consumer Protection Act, I.C. § 48-601 *et seq.*; and (4) professional negligence and/or breach of fiduciary duties.

Respondents filed motions to dismiss pursuant to I.R.C.P. 12(b)(6), and oral argument was heard on these motions on October 16, 2008.  On the same day Reed filed his motions for leave to amend his complaints, attaching his proposed amended complaints, and a hearing was held on these motions on December 4, 2008.

On December 23, 2008, the district court issued two opinions titled "Opinion and Order on Defendant's Motion for Preliminary Injunction" (Opinions) granting Respondents' motions to dismiss and denying Reed's motions to amend his complaints.  In reaching his decision the district court judge, who was also the judge in the Underlying Case, found that the arguments made by both Reed and Respondents incorporated events and actions that occurred in the Underlying Case and, therefore, took judicial notice of the Underlying Case *in toto*.  The district court subsequently granted Respondents' requests for attorney fees.

Reed filed a notice of appeal with this Court on January 30, 2009, and the two cases were consolidated for appeal on February 18, 2009.  In light of *Spokane Structures*, 148 Idaho 616, 226 P.3d 1263 (2010), it was recognized that no final judgment had been issued by the district

---

[2] Collins and Riley were also attorneys with HTEH.
[3] All of the above mentioned attorneys and law firms shall be collectively referred to as "Respondents".

court and the case was remanded for entry of a final judgment on March 16, 2010. This Court received Judgments from the district court for both of the pre-consolidation cases on March 24, 2010.

## II. ISSUES ON APPEAL

1. Whether the district court applied I.R.C.P. 12(b)(6) correctly in ruling on Respondents' motions to dismiss.

    a. Whether the litigation privilege should be adopted in Idaho and whether Reed's claims should have be dismissed accordingly.

    b. Whether, in the alternative, Reed's complaints alleged sufficient facts to withstand a motion to dismiss.

2. Whether the district court abused its discretion in denying Reed's motions for leave to amend his complaints.

    a. Whether Reed had standing to bring derivative claims against Respondents.

    b. Whether Reed pled additional facts in his amended complaints that would have altered the analysis as it applied to his original complaints.

3. Whether the district court abused its discretion in awarding Respondents attorney fees pursuant to I.C. §§ 12-121, 30-1-746, 48-608.

4. Whether Respondents are entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

Our standard of review for a grant of dismissal under Idaho Rule of Civil Procedure 12(b)(6) was concisely summarized by this Court in *Losser v. Bradstreet*:

> When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims.

145 Idaho 670, 672-73, 183 P.3d 758, 760-61 (2008) (internal citations and quotations omitted). In addition, "[t]his Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, __, 224 P.3d 458, 461 (2008). Ergo, a district court's dismissal of a complaint under I.R.C.P. 12(b)(6) shall be reviewed *de novo*.

This Court employs an abuse of discretion standard when reviewing a district court's denial of a motion to amend a complaint to add additional causes of action. *Spur Prod. Corp. v.*

4

*Stoel Rives LLP*, 142 Idaho 41, 43, 122 P.3d 300, 302 (2005). When reviewing an exercise of discretion on the part of a district court, this Court considers:

> "(1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason."

*Id.* (quoting *Estate of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004)).

## IV. ANALYSIS

### A. The district court erred in taking judicial notice of the Underlying Case when considering the 12(b)(6) motions.

Reed alleges that the district court did not apply the correct legal standard when considering Respondents' 12(b)(6) motions to dismiss. Specifically, Reed alleges that the district court erred in taking judicial notice of the Underlying Case, when it should have limited its review to the pleadings.

Idaho Rule of Civil Procedure 12(b) states, *inter alia*:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion* by Rule 56.

(Emphasis added).

Respondents make two arguments why they believe the district court's 12(b)(6) ruling should stand. First, the district court was acting within its permitted discretion in taking judicial notice of the Underlying Case. Second, having requested that the district court take judicial notice of the Underlying Case, Reed is barred under the invited error doctrine from raising this as an error on appeal. These arguments shall be considered in turn.

#### 1. The district court could not properly take judicial notice of the Underlying Case when ruling on 12(b)(6) motions to dismiss.

"A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated." *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). In *Hellickson v. Jenkins*, the Idaho Court of Appeals discussed judicial notice in the context of a 12(b)(6) motion to dismiss, stating that:

> [t]he only facts which a court may properly consider on a motion to dismiss for failure to state a claim are those appearing in the complaint, supplemented by

such facts as the court may *properly* judicially notice.  *Cohen v. United States,* 129 F.2d 733 (8th Cir. 1942).  However, a trial court, in considering a Rule 12(b)(6) motion to dismiss, has no right to hear evidence; and since judicial notice is merely a substitute for the conventional method of taking evidence to establish facts, the court has no right to take judicial notice of anything, with the possible exception of *facts of common knowledge* which controvert averments of the complaint.  *See Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303 (7th Cir. 1956); *Sears, Roebuck & Co. v. [Metro] Engravers, Ltd.*, 245 F.2d 67 (9th Cir. 1956); *Schwartz v. Commonwealth Land Title [Ins.] Co.*, 374 F.Supp. 564 (E.D.Pa. 1974), *supp. op.* (E.D.Pa.) 384 F.Supp. 302.

118 Idaho 273, 276, 796 P.2d 150, 153 (Ct. App. 1990) (emphasis in the original).  *See also Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1990) (comparing a 12(b)(6) motion to a Rule 56 motion the Court and finding, "[o]ne fundamental difference between the two motions lies in the scope of the court's consideration.  The grounds for a Rule 12(b)(6) dismissal comprise *only the pleadings and no more*") (emphasis added).

In *Hellickson*, a magistrate judge took judicial notice of the proceedings in two other cases.  118 Idaho at 275, 796 P.2d at 152.  The Court of Appeals found this to be in error, and remanded with instructions to either decide the 12(b)(6) Motion on the allegations contained in the complaint alone, or to convert the 12(b)(6) motion to a Rule 56 summary judgment proceeding and afford the parties reasonable opportunity to present materials pertinent to a motion for summary judgment.  *Id.* at 278, 796 P.2d at 155.

CBM ignores the direct Idaho precedent in *Hellickson* entirely, instead citing to the U.S. Supreme Court case of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, which states: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  See 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007)."  551 U.S. 308, 322 (2007).  Nothing in *Tellabs* is inconsistent with what is written in *Hellickson*.  HTEH cites to *Hellickson* for the proposition that courts may take judicial notice when considering a 12(b)(6) motion, but does not address *Hellickson* as it specifically applies to the issue of taking judicial notice of the proceedings in other cases.  The rule stated in *Hellickson* clearly applies here.

2.  The doctrine of invited error does not preclude Reed from appealing the district court's erroneous decision to take judicial notice of the Underlying Case *in toto*.

"It has long been the law in Idaho that one may not successfully complain of errors one has acquiesced in or invited.  Errors consented to, acquiesced in, or invited are not reversible."

*State v. Owsley*, 105 Idaho 836, 838, 673 P.2d 436, 438 (1983) (internal citation omitted). "Invited error" is "[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." Black's Law Dictionary 249 (3rd pocket ed. 2006).

At the hearing on Respondents' 12(b)(6) motions, on October 10, 2008, Reed's attorney, Bissell, had the following exchange with the district court judge:

> MR. BISSELL: Also, your Honor, I would - - I would ask the Court because we obviously - - we have talked about a lot of information in the past in this case and in the other cases and, you know, a lot of the information in the other cases kind of has an impact on this case. So *I would ask the Court to take judicial notice of everything that's been followed, argued in those previous cases - - or in the other matter, the underlying matter we might call it . . .*
>
> THE COURT: Well, that was actually my intention, Mr. Bissell, that's part of what I came to conclude is I really can't discuss this and rule on the pending Motion to Dismiss without the consideration of the underlying case, so that was actually my intention.
>
> MR. BISSELL: Okay, thank you, your Honor.

Respondents aver that, under the doctrine of invited error as it is applied in cases such as *State v. Owsley*, 105 Idaho 836, 838, 673 P.2d 436, 438 (1983), and *Woodburn v. Manco*, 137 Idaho 502, 505, 50 P.3d 997, 1000 (2002), Reed, having clearly requested that the district court take judicial notice of the Underlying Case, may not argue on appeal that this was in error. "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to [take a certain action] from later challenging that [action] on appeal." *Woodburn*, 137 Idaho at 505, 50 P.3d at 1000. Reed offers five reasons why he does not believe the doctrine of invited error should apply here, and these shall be addressed in turn.

First, Reed argues that "it is irrelevant who requested judicial notice", as the district court erred in failing to convert the motions to dismiss into motions for summary judgment when considering evidence beyond the pleadings, in accordance with *Hellikson*, 118 Idaho at 276, 796 P.2d at 153. Reed offers no citation for this proposition, and it conflicts with the policy underlying the invited error doctrine. The invited error doctrine presumes that the trial court acted in error, otherwise there would be no reversible error in any event. The invited error doctrine provides that where the error in question was encouraged or requested by a party then that party is precluded from challenging on the basis of that error on appeal. Contrary to Reed's

contention, the issue of which party requested the court to take that action — such action constituting error — is of great importance.

Second, Reed contends that the invited error doctrine does not apply because the district court had already intended to take judicial notice, based upon the district judge's response to Reed's counsel's request that the judge take judicial notice, that "that was actually my intention." Again, Reed offers no citation to any legal authority in support of this argument. This Court in *Owsley* wrote, "Errors consented to, acquiesced in, or invited are not reversible." 105 Idaho at 838, 673 P.2d at 438. It is clear here that Reed consented to the district court's taking judicial notice, as well as acquiescing to it and inviting it. This argument is without merit.

Third, Reed contends that the invited error doctrine does not apply because Reed's counsel was not tactically or strategically requesting judicial notice. Reed cites to no Idaho law in support of this contention, instead citing to *People v. Guerrero*, 66 Cal. Rptr. 3d 701 (Cal. Ct. App. 2007), and *Keller v. Columbus*, 797 N.E.2d 964, (Ohio 2003).

The only relevance to this issue presented in *Guerrero* is a footnote citing to *People v. Coffman*, 96 P.3d 30 (Cal. 2004). 66 Cal. Rptr. 3d at 703 n.3. In *Coffman* the Supreme Court of California writes:

> As articulated in *People v. Wickersham* [650 P.2d 311 (Cal. 1982)], disapproved on other grounds in *People v. Barton* [906 P.2d 531 (Cal. 1995)]: "The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal. . . . [I]t also must be clear that counsel acted for tactical reasons and not out of ignorance or mistake." *In cases involving an action affirmatively taken by defense counsel, we have found a clearly implied tactical purpose to be sufficient to invoke the invited error rule.*

96 P.3d at 49 (emphasis added) (ellipses and third alteration in the original). It is unnecessary to consider whether California's articulation on this issue is persuasive to Idaho, because even under this analysis Reed's argument fails. Reed affirmatively acted in requesting the trial court to take judicial notice of the Underlying Case, for the purpose of having the district court consider the Underlying Case, a clearly implied tactical purpose.

In the other case Reed relies on – *Keller* – the Supreme Court of Ohio examined a 12(b)(6) dismissal, which had been granted by the district court and reversed by the Court of Appeals, on the basis that the district court had considered evidence beyond the pleadings. The Appellants (Defendants) argued that because the Respondents (Plaintiffs) had attached evidence

8

to their pleading, Respondents were barred under the invited error doctrine from arguing that the district court erred in considering information beyond the pleadings. *Keller*, 797 N.E.2d at 969. The Court found that, under the facts of *Keller*, the record showed that Defendants had attached evidence to their own pleading first, that it was in response to this that the Plaintiffs had attached evidence to their own pleading, and that, therefore, the invited error doctrine did not apply. *Id.* at 969-70. Whatever persuasive authority *Keller* might offer to Idaho courts, it has no applicability here as neither Reed nor Respondents attached evidence to their pleadings. Further, even if the rule to be extrapolated from *Keller* is that a party may not be barred under the invited error doctrine where the other party invites that error first (a dubious proposition), there is no allegation that Respondents requested that the district court take judicial notice of the Underlying Case.

Fourth and fifth, Reed argues that the district court erred in taking judicial notice of the Underlying Case *in toto* without complying with I.R.E. 201. Specifically, Reed alleges that the district court acted in violation of I.R.E. 201(c) & (d). Idaho Rule of Evidence 201(c) outlines the rules for judicial notice where the court has discretion as to whether or not to take judicial notice, and I.R.E. 201(d) is for mandatory notice. I.R.E. 201(c) reads: "**When discretionary**. A court may take judicial notice, whether requested or not. When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court shall identify the specific documents or items that were so noticed." I.R.E. 201(d) reads:

> "**When mandatory**. When a party makes an oral or written request that a court take judicial notice of records, exhibits or transcripts from the court file in the same or a separate case, the party shall identify the specific documents or items for which the judicial notice is requested or shall proffer to the court and serve on all parties copies of such documents or items. A court shall take judicial notice if requested by a party and supplied with the necessary information."

Reed alleges that, as Reed's counsel did not supply the court with the necessary information to take judicial notice under I.R.E. 201(d), the court erred and invited error is inapplicable. Reed's argument concerning I.R.E. 201(d) is invalid; all this alleges is that the district court erred in taking judicial notice, not that this error was not invited by Reed's counsel. Reed's counsel failed to specify which materials from the Underlying Case he was requesting the court to take notice of, implicitly inviting the court to use its own discretion. Reed is barred from alleging an I.R.E. 201(d) violation under the invited error doctrine. Where an attorney is requesting that a court take judicial notice of a document or items, that attorney must state with

9

particularity what he is asking the Court to take notice of. Where an attorney does not meet this requirement it is improper for a court to take judicial notice under I.R.E. 201(d). Furthermore, where it was erroneous for the district court to take judicial notice it certainly cannot be said that such notice was mandatory; therefore I.R.E. 201(d) is inapplicable.

Reed further alleges that, if I.R.E. 201(c) applies, the district court erred in not identifying the specific documents and files that it took judicial notice of, an error which may not be attributed to invited error as Reed neither asked nor encouraged the district court to take judicial notice under I.R.E. 201(c) *in toto*, without specifying which documents and exhibits it was taking notice of. This argument has merit. The court clearly failed to comply with the specificity requirement of I.R.E. 201(c). Reed invited the court to take judicial notice, and the I.R.E. 201(c) error clearly occurred as a result of that invited error, but that violation cannot fairly be attributed to the error invited. The court could have erroneously taken judicial notice of parts of the Underlying Case, as requested and encouraged by Reed, and still followed I.R.E. 201(c) by identifying the particular evidence from the Underlying Case which it took notice of.

The district court erred in taking judicial notice of the Underlying Case, and though Reed is generally precluded from raising this issue on appeal under the invited error doctrine, the district court erred beyond what was invited by Reed in failing to comply with the specificity requirements of I.R.E. 201(c).

In spite of the district court's error, this error is harmless under I.R.C.P. 61. *See Banning v. Minidoka Irrigation Dist.*, 89 Idaho 506, 510, 406 P.2d 802, 803 (1965). This Court applies a *de novo* standard of review to appeal from grants of 12(b)(6) motions, and shall look only to the pleadings without consideration to the record from the Underlying Case.[4] Therefore, we shall consider the pleadings in this case under the standards applicable to a 12(b)(6) proceeding.

**B. The Litigation Privilege**

The district judge's Opinions – granting Respondents' motions to dismiss and denying Reed's motions for leave to amend his complaints – relied strongly on the so-called "litigation privilege," or "litigation immunity."

---

[4] Even if the Court were inclined to consider the same materials that the district court judge erroneously considered from the Underlying Case it could not, as the district court failed to identify the specific materials that it considered in reaching its ruling.

The litigation privilege is deeply rooted in the common law doctrine that attorneys are immune from civil suits for defamation or libel when they arise out of communications made in the course of judicial proceedings. In fact, "[a]t common law, the litigation privilege blanketed all participants in the court system; private attorneys were treated no differently than judges, government lawyers, and witnesses." *Loigman v. Twp. Comm. of Middleton*, 889 A.2d 426, 433, 435 (N.J. 2006) (discussing, *e.g.*, *Cutler v. Dixon*, 76 Eng. Rep. 886 (K.B. 1585); *Hodgson v. Scarlett*, 171 Eng.Rep. 362 (C.P. 1817); *Hoar v. Wood*, 44 Mass. 193 (1841)). *See also Carpenter v. Grimes Pass Placer Mining Co.*, 19 Idaho 384, 114 P. 42 (1911) (first application of what may be termed the "defamation privilege" in Idaho, discussing the common law privilege and its application across American jurisdictions; noting that American Courts, unlike English Courts, generally require that communications must be pertinent and material to the matter before the judicial proceeding in order for the privilege to apply.) This privilege is predicated on the long-established principle that the efficient pursuit of justice requires that attorneys and litigants must be permitted to speak and write freely in the course of litigation without the fear of reprisal through a civil suit for defamation or libel. *Loigman*, 889 A.2d at 434.

Examining the two most recent cases where Idaho has applied this privilege (as it applies to attorneys) sheds some further light on the application of this privilege under Idaho law. In *Richeson v. Kessler*, an attorney, Richeson, was acting as counsel for the Andersons. 73 Idaho 548, 550, 255 P.2d 707, 707 (1953). Another attorney, Kessler, applied with the district court to appear *amicus curiae*. *Id*. Richeson objected to this application to appear *amicus curiae* in his brief to the court. *Id.* The Andersons subsequently dismissed Richeson and retained Kessler. *Id.* When Kessler learned of Richeson's brief objecting to Kessler's application he wrote a letter to the district judge asking that the judge withdraw the brief from consideration, specifically alleging that portions of said brief had been "malicious, scurrilous, and definitely improper and unethical." *Id*. Richeson subsequently filed suit against Kessler, alleging that the letter was libelous. *Id*.

The *Richeson* Court held that "[w]ith certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although

11

made maliciously and with knowledge of its falsity." 73 Idaho at 551-52, 255 P.2d at 709. In addition, this Court specified that:

> The term judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power, 53 C.J.S., Libel and Slander, § 104, page 169, and to be privileged it is not absolutely essential that the language be spoken in open court or contained in a pleading, brief or affidavit.

*Id.* at 551, 255 P.2d at 709.

More recently, in 1993, the Idaho Court of Appeals applied the privilege in *Malmin v. Engler*, wherein the court noted that this privilege "'is based upon a public policy of securing to attorneys and officers of the court the utmost freedom in their efforts to secure justice for their clients.'" 124 Idaho 733, 735, 864 P.2d 179, 181 (Ct. App. 1993) (quoting Restatement (Second) of Torts § 586 cmt. a (1965)). The court emphasized that statements made prior to, or in preparation of, a judicial proceeding are also protected under the privilege. *Id.* at 737, 864 P.2d at 184.

Idaho's Appellate Courts have never considered the propriety of expanding this privilege to encompass conduct, as well as statements, which occur during the course of litigation, nor whether the privilege should extend to causes of action beyond defamation and libel. We take this opportunity to do so.

1. Examination of the litigation privilege across various jurisdictions.

In *Loigman v. Township Committee of Middleton*, the Supreme Court of New Jersey noted that, although the litigation privilege was originally used only to protect against defamation suits arising from comments which were made in the course of judicial proceedings, the privilege has been widely expanded in order to address creative pleading. 889 A.2d 426, 435 (N.J. 2006). Specifically, in noting that, "[i]n New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims," the *Loigman* Court cited to *Rainier's Dairies v. Raritan Valley Farms*, 117 A.2d 889, 895 (N.J. 1955). *Id.* at 436.

In *Rainier*, the Court was considering the protections which the litigation privilege provided to a litigant, rather than an attorney. However, as noted above, these privileges arose from the same public policies at common law, and the decision has been extended to the litigation privilege as it pertains to attorneys. The *Rainier* Court held that in addition to the traditional protection against suits for defamation, the litigation privilege also protected against

claims for malicious interference with business operations, reasoning that "[i]f the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label." *Id.* at 895.

The district court in the case at hand found that the Texas Court of Appeals case of *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App. 2005), was particularly instructive, having many similarities to the present action. In *Alpert*, the Appellants had first sued their own attorney, Riley, and subsequently filed suit against the Respondent, the law firm representing Riley in that action, claiming that Respondent "conspired with Riley to defraud [the Appellants], and both aided and abetted in the breach of, and tortiously interfered with, Riley's fiduciary duty to [the Appellants]." *Id.* at 402. The district court in *Alpert* had dismissed the case, finding that the Appellants had failed to plead a cause of action recognized by Texas law and, consequently, the Texas Court of Appeals heard the case on appeal in circumstances analogous to those presented in the present case. In affirming the dismissal by the district court, the Texas Court of Appeals explained that:

> Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. An attorney has a duty to zealously represent his clients within the bounds of the law. In fulfilling this duty, an attorney has the right to interpose defenses and pursue rights that he deems necessary and proper, without being subject to liability or damages. If an attorney could be held liable to an opposing party for statements made *or actions taken* in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. Such a conflict hampers the resolution of disputes through the court system and the attainment of justice. Thus, to promote zealous representation, courts have held that *an attorney is "qualifiedly immune" from civil liability*, with respect to non-clients, for actions taken in connection with representing a client in litigation.
>
> This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. Courts have refused to acknowledge an independent cause of action in such instances "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." [*Bradt v. West*, 392 S.W.2d 56, 72 (Tex. App. Ct. 1994)] . . . Thus, an attorney's conduct, even if

13

frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client. The immunity focuses on the *type of conduct*, not on whether the conduct was meritorious in the context of the underlying lawsuit.

*Id.* at 405-06 (internal citations omitted) (emphases added).

In *Clark v. Druckman*, the Supreme Court of West Virginia considered, *inter alia*, the following question, certified to it by a district court:

Is a party to a civil action barred, by virtue of the litigation privilege, from bringing claims for civil damages against the opposing party's attorney if the alleged act of the attorney in the course of the attorney's representation of the opposing party is conduct and not a written or oral statement which arose in the civil action and which has some relationship to the civil action?

624 S.E.2d 864, 871 (W. Va. 2005). The Court answered this question in the affirmative, after considering the policy considerations underlying the litigation privilege, specifically:

(1) promoting the candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Id.* at 870 (quoting *Matsuura v. E.I. du Pont de Nemours & Co.*, 73 P.3d 687, 693 (Haw. 2003)). The *Clark* Court found that, in light of these policy considerations, "we see no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process." *Id.* (emphasis in the original). The Court noted that the Supreme Court of Florida had reached a similar conclusion, in holding that:

absolute immunity[5] must be afforded to any *act* occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or *other tortious behavior* . . . , so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to *other misconduct* occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best

---

[5] The difference between an absolute privilege and a qualified privilege is that:

the absolute privilege affords complete protection whereas the qualified privilege affords protection only if there is no ill motive or malice in fact. The most noteworthy illustration of the absolute privilege or immunity is that afforded in judicial proceedings where judges, attorneys, witnesses, parties and jurors are fully protected against defamation actions based on utterances made in the course of the judicial proceedings and having some relation thereto.

*Rainier's Dairies v. Raritan Valley Farms*, 117 A.2d 889, 891-82 (N.J. 1955) (internal citations omitted).

judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Id.* (emphases added) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayers & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994)). *See also*, *Maness v. Star-Kist Foods, Inc.*, 7 F.3d 704, 709 (8th Cir. 1993) (applying Minnesota law) ("[A]n attorney who acts within the scope of the attorney-client relationship will not be liable to third persons for actions arising out of his professional relationship unless the attorney exceeds the scope of his employment or acts for personal gain."); *Reynolds v. Schrock,* 142 P.3d 1062, 1069 (Or. 2006) (en banc) ("[F]or a third party to hold a lawyer liable for substantially assisting in a client's breach of fiduciary duty, the third party must prove that the lawyer acted outside the scope of the lawyer-client relationship."); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, LLP,* 151 P.3d 732 (Haw. 2007) (taking an exhaustive look at the litigation privilege in multiple jurisdictions, and concluding that public policy supports applying the privilege to conduct as well as communications).

In line with the foregoing, we find that the litigation privilege shall be found to protect attorneys against civil actions which arise as a result of their conduct or communications in the representation of a client, related to a judicial proceeding.

2.  When the litigation privilege applies.

Reed correctly contends that the litigation privilege does not provide attorneys with blanket immunity against all claims raised against them, merely because they are acting as an attorney in litigation. However, where attorneys are being sued by the opponent of their client in a current or former lawsuit, and that suit arises out of the attorneys' legitimate representation of that client pursuant to that litigation, the privilege does apply.

The Supreme Court of West Virginia, in *Clark v. Druckman*, wrote:

> In *Collins* [*v. Red Roof Inns, Inc.,*] we recognized that absolute privileges, such as the litigation privilege, should only be permitted in limited circumstances. [566 S.E.2d 595, 598 (W. Va. 2002)]. Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in *all* circumstances. In *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d. 230, 235 (Colo. 1995), the Colorado Supreme court noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney." *See also Baglini v. Lauletta,* [768 A.2d 825, 833-34 (2001)] ("The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process."). We believe such exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are

reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to *intentional conduct which is unrelated to legitimate litigation tactics and which harms an opposing party*. As recently noted by a California court:

> [a] fraud claim against a lawyer is no different from a fraud claim against anyone else. If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, the limitations on liability for negligence do not apply to liability for fraud.

*Vega v. Jones, Day, Reavis & Pogue,* [17 Cal.Rptr.3d 26, 31-2] (Cal. Ct. App. 2004) (internal citations and quotations omitted). . . .

> Where an attorney files suit without reasonable or probable cause with the intent to harm a defendant, we do not believe the litigation privilege should insulate him or her from liability for malicious prosecution.

624 S.E.2d at 870-71 (first emphasis in the original). *See also* Restatement (Third) of The Law Governing Lawyers § 57(2) (2000)

> (A lawyer representing a client in a civil proceeding or procuring the institution of criminal proceedings by a client is not liable to a nonclient for wrongful use of civil proceedings or for malicious prosecution if the lawyer has probable cause for acting, or if the lawyer acts primarily to help the client obtain a proper adjudication of the client's claim in that proceeding.)

In *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, LLP*, the Supreme Court of Hawai'i took an extensive look at the litigation privilege, and how different jurisdictions have applied the privilege as it pertains to claims of tortious interference. 151 P.3d 732 (Haw. 2007). The Court noted that generally for a claim of tortious interference to be brought against an attorney, where such claim arises out of his performance as an attorney, it must be established that the attorney acted in a manner demonstrating personal malice or a desire to harm, not springing from his desire to protect his client. *Id.* at 750. (discussing *Schott v. Glover*, 440 N.E.2d 376, 380 (Ill. App. Ct. 1982) ("A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged if the plaintiff can set forth factual allegations from which *actual malice* may reasonably be said to exist." (Emphasis added). However, these allegations "would necessarily include a *desire to harm*, which is *independent of and unrelated to the attorney's desire to protect his client*.") (Emphases added)). *See also Fraidin v. Weitzman*, 611 A.2d 1046, 1080 (Md. Ct. Spec. App. 1992) ("To remove the qualified privilege, the attorney must possess *a desire to harm which is independent*

16

*of the desire to protect his client.* This would constitute *actual malice* and therefore substantiate a tortious interference with contract claim.") (emphases added) (holding that, where the Appellant failed to allege facts constituting actual malice on behalf of the attorney, a motion for summary judgment was appropriately granted); *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*, 931 S.W.2d 166, 182 (Mo. Ct. App. 1996) ("This court recognizes a privilege for attorneys, when acting within the scope of the attorney-client relationship, to advise and act for a client even though that advice, if wrong, may cause a client to tortiously interfere with another's business relationship or expectancy, so long as the attorney does not employ wrongful means and acts with good faith to protect the interests of the client and not for the attorney's self interest."); Restatement (Third) of The Law Governing Lawyers § 57(3) (2000) ("A lawyer who advises or assists a client to make or break a contract, to enter or dissolve a legal relationship, or to enter or not enter a contractual relation, is not liable to a nonclient for interference with contract or with prospective contractual relations or with a legal relationship, if the lawyer acts to advance the client's objectives without using wrongful means.").

Application of the litigation privilege varies across jurisdictions, but the common thread found throughout is the idea that an attorney acting within the law, in a legitimate effort to zealously advance the interests of his client, shall be protected from civil claims arising due to that zealous representation. An attorney engaging in malicious prosecution, which is necessarily pursued in bad faith, is not acting in a manner reasonably calculated to advance his client's interests, and an attorney engaging in fraud is likewise acting in a manner foreign to his duties as an attorney. If an attorney engages in tortious interference with a third-party's interest out of a personal desire to harm, separate entirely from his desire to advance his client's interests, that attorney's conduct is not properly adjudged as occurring in the course of his representation of his client's interests.

It should be noted that although some courts, like the West Virginia Supreme Court in *Clark*, refer to the litigation privilege as an absolute privilege and others, like the Maryland Court of Special Appeals in *Fraidin*, refer to it as a qualified privilege, this is really just a difference in framing the privilege, not a difference in how the privilege is applied. Some courts consider it an absolute privilege where it applies, but say that it does not apply where the attorney is acting outside the scope of representation of his client's interests. Other courts consider it a qualified privilege which does not apply where an attorney is shown to be acting for

his own interests. In either event, these courts have come to a general agreement that the litigation privilege protects attorneys from all civil suits which are raised against them by a party adverse to their clients, as a result of their representation of their clients, provided attorneys do not act beyond the scope of that representation for their own purposes. For Idaho, the litigation privilege is an absolute privilege, which only applies when a specific condition precedent is met, namely, that an attorney is acting within the scope of his employment, and not solely for his personal interests.

It is presumed that an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests. *See Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 577-78 (Pa. 1976) (holding that "all reasonable doubts (if any) should be resolved in favor of relevancy and pertinency and materiality"); *Singh v. HSBC Bank USA*, 200 F.Supp.2d 338, 340 (S.D.N.Y. 2002) (holding that if any circumstances would support a finding that attorney actions are pertinent to litigation then absolute immunity should protect the attorney). To find otherwise would invite attorneys to divide their interest between advocating for their client and protecting themselves from a retributive suit. Allowing such a divided interest would run contrary to the Idaho Rules of Professional Conduct, because, as noted by the district court judge below:

> [w]hile attorneys must not knowingly counsel or assist a client in committing a crime or fraud, Idaho's Rules of Professional Conduct require an attorney to pursue matters on behalf of a client despite opposition, obstruction or personal inconvenience to the attorney, and require an attorney to take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.

(Citing I.R.C.P. 1.3(1)).

Therefore, this Court holds that, as a general rule, where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege. An exception to this general rule would occur where the plaintiff pleads facts sufficient to show that the attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's.

It is true that such an approach means there is a risk that a wronged party may be denied civil relief under the law, but as Judge Learned Hand stated, in justifying absolute immunity for federal prosecutors:

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance *it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation*.

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949) (emphasis added). *See also*, *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983) (quoting Judge Hand in justifying absolute witness immunity). This statement has clear applicability to the litigation privilege as it applies to attorneys. Finally, a lack of civil redress does not mean immunity from consequence and punishment. As the West Virginia Supreme Court wrote in *Clark v. Druckman*, "[W]e believe our *Rules of Civil Procedure*, our *Rules of Professional Conduct*, and the court's inherent authority provide adequate safeguards to protect against abusive and frivolous litigation tactics." 624 S.E. 2d 864, 871 (W. Va. 2005). We concur with the *Clark* Court in this regard.

We find that when an attorney is acting in his representative capacity pursuant to litigation, and not solely for his own interests, he shall enjoy the litigation privilege and shall not be subject to suit by an opponent of his client, arising out of his representative conduct and communications. We now proceed to consider Reed's argument that the litigation privilege should not apply here due to the specific and unique circumstances of this case.

### i. Timing

The district court below summarized Reed's argument – that the litigation privilege did not apply because Respondents were never lawfully hired as counsel by the AIA Entities – in the following manner:

In the instant matter, Plaintiff has argued that his is a unique situation because he has filed suit against the AIA corporations and its board members, that the

contractual terms at the core of his underlying suit make him the sole shareholder of the AIA corporations and, therefore, there is a conflict between the AIA corporations and the board members that makes it inappropriate, even fraudulent, for the board, or more particularly for managing board member John Taylor, to retain counsel for the corporations, to direct counsel for the corporations in any way, or for there to be any cooperation between counsel for the corporations and counsel for John Taylor. Bottom line, Reed Taylor contends he is the only person with authority to determine who should serve as counsel for the corporations he is suing.

Although Reed argues that the circumstances of this case are unique, they are not. This is a mere contract-interpretation case. However, there is one unusual aspect of this case which, far from taking this case outside the scope of the litigation privilege, cries out for application of that doctrine with particular urgency – the timing of this suit. In most cases dealing with the litigation privilege, a third-party – who had been the opponent to an attorney's client in a previous lawsuit – is suing that attorney *after* their litigation against the client has been resolved. In this case Reed sued Respondents while the Underlying Case was ongoing, and yet many of his arguments rely upon his presumption that the Underlying Case will be decided in his favor. The public policies of: (1) protecting attorneys from the threat of retaliatory litigation, in order to ensure that they may zealously advocate for their client without fear of reprisal; and (2) protecting judicial economy, are magnified when confronted with not only the threat of retaliatory litigation, but the reality of it while the underlying suit is ongoing.

The circumstances of this case raise an important question. Where the conduct of opposing counsel falls outside the protection of the litigation privilege, when may a cause of action be instituted against that attorney? As we apply the modern litigation privilege for the first time in this case we have no precedent directly on point, and instead consider analogous actions – those for legal malpractice and malicious prosecution.

We have previously indicated, in a case dealing with legal malpractice, that, as objective proof in support of actual damages is required for recovery, the statute of limitations for a legal malpractice claim does not begin to run until the litigation forming the basis of that claim has concluded. *City of McCall v. Buxton*, 146 Idaho 656, 661, 201 P.3d 629, 634 (2009). The clear reasoning behind this decision was that the cause of action cannot arise until damages are incurred, and the attorney's conduct can be reviewed under the totality of the case. *See id.*

The elements that must be shown to recover on the basis of malicious prosecution are found in *Badell v. Beeks*, specifically: "(1) That there was a prosecution; (2) That *it terminated* in

20

favor of the plaintiff; (3) That the defendant was the prosecutor; (4) Malice; (5) Lack of probable cause; and (6) *Damages sustained* by the plaintiff." 115 Idaho 101, 102, 765 P.2d 126, 127 (1988) (emphases added). As in cases for legal malpractice based on conduct occurring during the course of a trial, in order to bring a malicious prosecution claim there must be damages and it must be determined that the suit was groundless, neither of which is possible prior to resolution of the case.

The theme in our analyses in these two comparative causes of action is that Idaho courts take into consideration the significant complexities involved in application of law, such as trial strategies and negotiation tactics, and wait until all those complexities have resolved themselves prior to hearing a claim. Only when a case has been concluded may one truly identify whether or not a prosecution has been malicious, whether an attorney has committed malpractice, or, in the case at hand, whether an attorney has acted fraudulently or solely for his own benefit. Therefore, we conclude that a cause of action against one party's opponent's attorney in litigation, based on conduct the attorney committed in the course of that litigation, may not be properly instituted prior to the resolution of that litigation, even where the allegedly aggrieved party believes that the attorney in question has been acting outside the legitimate scope of representation and solely for his own benefit. Under this same reasoning, the allegations of aiding and abetting in the commission of tortious acts, although marginally pled, must await resolution of the Underlying Case. Until the Underlying Case is resolved a court cannot determine whether any tortious act was committed, let alone acts constituting the aiding and abetting of those alleged tortious acts.

As for Reed's argument, quoted above in the district court's summary, that he is the only one authorized to hire counsel for the AIA Entities, this inference does not flow from the allegations in Reed's complaints. Reed's complaints are largely focused on the argument that Respondents violated Idaho's Rules of Professional Conduct or breached their fiduciary duty toward the AIA Entities, and these claims are dependent upon Respondents being retained as counsel for the AIA Entities, and holding fiduciary duties toward them. Reed has failed to plead facts which allege that Respondents did not accept employment with the AIA Entities in good faith.

**C. 12(b)(6) Analysis.**

As previously stated, this Court reviews the grant of a 12(b)(6) motion *de novo*. *See Losser v. Bradstreet*, 145 Idaho 670, 672-73, 183 P.3d 758, 760-61 (2008); *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, __, 224 P.3d 458, 461 (2008).

    1.  Civil conspiracy and interference with a contract.

As this Court wrote in *Youngblood v. Higbee*:

> While we "will make every intendment to sustain a complaint that is defective, e.g., wrongly captioned or inartful, a complaint cannot be sustained if it fails to make a short and plain statement of a claim upon which relief may be granted." *Gibson v. Ada* [*Cnty.*] *Sheriff's Dep't*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003). We look at whether the complaint puts the adverse party on notice of the claims brought against it.

145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008).

Reed alleges in his complaints that Respondents have entered into a civil conspiracy with others, including their clients. As this Court noted in *Mannos v. Moss*:

> A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner. Civil conspiracy is not, by itself, a claim for relief. The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.

143 Idaho 927, 935, 155 P.3d 1166, 1174 (2007) (quoting *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003)). In addition, "[a]n agreement is the foundation of a conspiracy charge and there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Id*. Reed's failure to make specific factual pleadings is particularly fatal here. It appears most likely that Reed is alleging that the goal of the conspiracy was fraudulent, and civil conspiracy must therefore be pled with particularity under *Wasco Prods., Inc. v. Southwall Techs, Inc.*, 435 F.3d 989, 990-92 (9th Cir. 2006). Furthermore, it is axiomatic that an agent acting within the scope of his representation cannot conspire with his principal, *Afton Energy, Inc. v. Idaho Power Co.*, 122 Idaho 333, 340, 834 P.2d 850, 857 (1992), and "'[t]he relationship between an attorney and client is one of agency' in which the client is the principle and the attorney is the agent." *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004) (quoting *Muncey v. Children's Home Finding and Aid Soc. of Lewiston*, 84 Idaho 147, 151, 369 P.2d 586, 588

(1962). Even if Reed prevails in the Underlying Case, a relationship of agency still existed between the Respondents and their clients.

Finally, Reed alleges in the "Facts" section of his complaints that Respondents engaged in tortious interference with contractual rights.

> On February 22, 2007, Reed J. Taylor voted the stock of AIA Insurance, Inc. and attempted to take control of it pursuant to his contractual rights as provided under the law, the contract documents, and I.C. § 30-1-722. However, the interested directors of AIA Insurance, Inc. (including R. John Taylor) by and through [Respondents] intentionally assisted in breaching the terms of the Amended and Restated Stock Pledge Agreement and refused to acknowledge Plaintiff Reed J. Taylor's valid vote of the stock of AIA Insurance, Inc. and refused to surrender control as required. [Respondents] further engaged in inappropriate conduct in assisting interested parties (including R. John Taylor) in obtaining and/or maintaining a restraining order and preliminary injunction against Plaintiff Reed J. Taylor, when [Respondents] knew there was no legitimate legal basis to do so, that doing so was an intentional violation and tortious interference with Reed J. Taylor's contractual rights, and that the assets and funds of AIA Insurance, Inc. were being misappropriated and/or not safeguarded.

Under Idaho law it is factually impossible for a party to tortiously interfere with that party's own contract. *Ostrander v. Farm Bureau Mut'l Ins. Co. of Idaho, Inc.* 123 Idaho 650, 654, 851 P.2d 946, 950 (1993). As noted above, the client-attorney relationship is one of agency, and in line with this Court's decision in *Beco Const. Co, Inc. v. J-U-B Engineers, Inc.*, 145 Idaho 719, 184 P.3d 844 (2008), where an agent is acting within the scope of his representation he shall be treated the same as his principal for purposes of tortious interference with a contract.

Reed's complaints fail to allege sufficient facts to make out causes of action for civil conspiracy, or tortious interference with a contract. In addition, other than an attempt to claim that Respondents were never properly employed by the AIA Entities - a claim dealt with above - Reed fails to allege that Respondents were acting outside the scope of their employment or solely for their own benefit. Therefore, these claims are also barred by the litigation privilege.

2. Legal malpractice and breach of fiduciary duty.

This Court considered a claim of legal malpractice in *Harrigfeld v. Hancock*, finding:

> "The elements of a legal malpractice actions are: (a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damages to the client . . .

23

> As to the burdens of proof in such cases . . . '[t]he burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client' and . . . '[l]ikewise the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage.'" *Sherry v. Diercks*, 29 Wash. App. 433, 628 P.2s 1336, 1338 (1981) (citations omitted).
>
> We agree with the Washington court as to the elements of a cause of action for legal malpractice and to allocation of the burden of proof in such cases.

140 Idaho 134, 136, 90 P.3d 884, 886 (2004) (quoting *Johnson v. Jones*, 103 Idaho 702, 706-07, 652 P.2d 650, 654-55 (1982)).

It is clear that Reed, in his complaints, has failed to allege that he is in an attorney-client relationship with Respondents, and therefore lacks the privity necessary to sue Respondents for legal malpractice. *Harrigfeld* is the only case in which this Court has found an exception to this requirement; specifically this Court found that the intended beneficiary of a testamentary instrument would have standing to bring a malpractice claim against the attorney who drafted said instrument. *Id.* at 138, 90 P.3d at 888. This Court went on to conclude that, "[a] direct attorney-client relationship is required to exist between the plaintiff and the attorney-defendant in a legal malpractice action except in this very narrow circumstance." *Id*. at 139, 90 P.3d at 889. This principle was reaffirmed in a case to which Reed was a party – *Taylor v. Maile*, 142 Idaho 253, 127 P.3d 156 (2005). Reed cites to law from other jurisdictions, ignoring the well-established Idaho precedent, in arguing that third-party beneficiaries to an attorney-client relationship may have standing to pursue malpractice claims against an attorney. Reed offers no compelling reason why this Court should expand its carefully reasoned analysis in *Harrigfeld*, and it is incredulous that Reed would attempt to assert that attorneys hired by the AIA Entitites, to fight off Reed's litigation against those entities, were being retained for Reed's benefit. As Reed has failed to plead facts sufficient to find that he has standing to bring claims against Respondents for legal malpractice, we find that Reed has failed to state a claim upon which relief may be granted, as to malpractice.

As for Reed's claim that Respondents breached their fiduciary duties, he has failed to allege facts establishing the existence of a duty on the part of Respondents toward Reed. As this Court has held, "[t]he scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained." *Johnson v. Jones*, 103 Idaho 702, 704, 652 P.2d 650, 652 (1982). Reed's complaints allege that he has been harmed as a result of Respondents

24

not acting in the best interests of the AIA Entities, but Reed's complaints also specifically state that he is not suing under a derivative cause of action. Reed has failed to allege facts which can support a finding that Respondents owed any fiduciary duty to Reed personally.

Reed, also claims that his complaints and amended complaints pled causes of action for fraud and constructive fraud. Pursuant to Idaho Rule of Civil Procedure 9(b), fraud must be pled with particularity. As this Court wrote in *Glaze v. Deffenbaugh*:

> A party must establish nine elements to prove fraud: "1) a statement or a representation of fact; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity; 5) the speaker's intent that there be reliance; 6) the hearer's ignorance of the falsity of the statement; 7) reliance by the hearer; 8) justifiable reliance; and 9) resultant injury."

144 Idaho 829, 833, 172 P.3d 1104, 1108 (2007) (quoting *Mannos v.Moss*, 143 Idaho 927, 931, 155 P.3d 1166, 1170 (2007)). Reed fails to plead these elements in a general sense, let alone with particularity and, as such, has failed to state a claim upon which relief may be granted as to fraud.

"An action in constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty." *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997). "Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends." *Mitchell v. Barendregt*, 120 Idaho 837, 844, 820 P.2d 707, 714 (Ct. App. 1991) (found to be in error on other grounds by *Polk v. Larrabee*, 135 Idaho 303, 314, 17 P.3d 247, 258)). It is clear that Reed has not alleged facts sufficient to support an inference that he is in an analogous relationship with Respondents, and has therefore not pled a claim upon which relief may be granted as to constructive fraud.

### 3. Violation of the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*

In order to have standing under the Idaho Consumer Protection Act (ICPA), I.C. § 48-601, *et seq.*, the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively. *See* I.C. 48-608(1) ("Any person who purchases or leases goods or services and thereby suffers . . ."); *Haskin v. Glass*, 102 Idaho 785, 788, 640 P.2d 1186, 1189 (Ct. App. 1982) (holding "that a claim under the ICPA must be based upon a contract"). It is clear from Reed's complaints that he is not alleging that he entered into a contractual relationship with Respondents. Therefore, Reed's complaints have failed to state

25

claims for relief under the ICPA. Respondents further point out that the ICPA only permits recovery for certain specific prohibited actions that are deemed to be unfair or deceptive. *See* I.C. §§ 48-603 – 48-603(E). Reed's complaints fail to allege which specific prohibited unfair or deceptive practice they are meant to have engaged in. Even assuming all facts pled by Reed to be true, he has failed to state a claim for which relief may be granted under the ICPA.

4. Conversion

Reed alleges in his complaints that Respondents' acceptance of payment for their work as attorneys for the AIA Entities amounts to conversion. Respondents argue that Reed's complaints fail to allege facts which, if true, would demonstrate that Respondents' conduct meets the three elements of conversion under Idaho law. This Court defined conversion in *Peasley Transfer & Storage Co. v. Smith*, as "a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with rights therein." 132 Idaho 732, 743, 979 P.2d 605, 616 (1999). This definition can be broken down into three elements which are required for a claim of conversion to be valid: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property.

Here it is readily apparent that Reed's complaints failed to allege that the property that Respondents are meant to have converted was personal property and, therefore, analysis of the other elements is unnecessary. Here Reed has alleged that Respondents converted a sum of money, and Idaho case law clearly states that "[n]ormally, conversion for misappropriation of money does not lie unless it can be described or identified as a specific chattel." *Warm Springs Props., Inc. v. Andora Villa, Inc.*, 96 Idaho 270, 272, 526 P.2d 1106, 1108 (1974). *See also High View Fund, L.P. v. Hall*, 27 F. Supp.2d 420, 429 (S.D.N.Y. 1994) ("More particularly, if the alleged converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action.") (internal quotations and citations omitted). Nothing in Reed's complaints suggests that the sums paid to Respondents for the services they rendered to their corporate clients could be described or identified as specific chattel. As such, we affirm the district court's grant of Respondents' motions to dismiss as to this claim.

26

**D. The district court did not abuse its discretion in denying Reed's motions to amend his complaints.**

The district court below denied Reed's motions for leave to file amended complaints, on the ground that granting these motions would be futile as the proposed amended complaints would not have withstood a motion to dismiss.

Under Idaho law, motions for leave to amend pleadings are to be liberally granted, however, it is also the case that, as this Court said in *Black Canyon Racquetball Club, Inc. v. Idaho First National Bank*:

> [i]n determining whether an amended complaint should be allowed, where leave of the court is required under Rule 15(a), the court may consider whether the new claims proposed to be inserted into the action by the amended complaint state a valid claim. If the amended pleading does not set out a valid claim, or if the opposing party would be prejudiced by the delay in adding the new claim, or if the opposing party has an available defense such as a statute of limitations, it is not an abuse of discretion for the trial court to deny the motion to file the amended complaint.

119 Idaho 171, 175, 804 P.2d 900, 904 (1991) (internal citation omitted).

As was acknowledged by the district court, Reed's proposed amended complaints set out the same causes of action as his original complaints while adding derivative causes of action. Having dealt with Reed's direct causes of action above, and finding no changes in his proposed amended complaint sufficient to alter our analyses, these issues shall not be re-examined. We now consider Reed's proposed derivative causes of action.

Idaho Code § 30-1-741 sets out the minimum requirements which must be met in order for a derivative claim to be brought, stating:

> **Standing.** A shareholder may not commence or maintain a derivative proceeding unless the shareholder:
>
> (1) Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one (1) who was a shareholder at that time; and
>
> (2) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

Reed does not allege in either his original complaints or proposed amended complaints that he is a shareholder of either AIA Entity. Rather, Reed claims the status of a former shareholder whose stock was redeemed, seeking to recover the balance owing on that stock redemption. Even if Reed's claims are true that his security interests entitle him to gain stock in the AIA Entities, he

did not hold stock when this lawsuit was commenced, and does not claim to. Therefore, it is clear under I.C. § 30-1-741 that Reed was not a shareholder at the time he brought this suit, and has no standing to pursue a derivative claim on behalf of the corporation.[6]

As Reed's proposed amended complaints did not add any facts in support of his direct causes of action raised in his original complaints, and as he clearly lacked standing under Idaho law to bring derivative claims, not being the shareholder of the corporation he wished to bring suit on behalf of, we find that the district court acted within its discretion in denying Reed's motions for leave to amend his complaints on the ground of futility.

**E. Attorney fees below**

As this Court stated in *Henderson v. Henderson Investment Properties, L.L.C.*:

When reviewing a trial court's award of attorney fees, this Court applies an abuse of discretion standard. "To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason."

148 Idaho 638, __, 227 P.3d 568, 569-70 (2010) (quoting *Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008) (internal citations omitted).

It is clear from the district court's order granting attorney fees that it recognized the issue as one of discretion, and that it reached its decision through an exercise of reason, on all bases it considered. The question therefore, is whether the court acted within the boundaries of discretion consistent with legal standards in reaching its determinations. The district court awarded attorney fees under: (1) I.C. § 12-121 and I.R.C.P. 54(e)(1); (2) I.C. § 30-1-746(2)-(3); and (3) I.C. § 48-608(5). We shall review each to determine whether the district court exceeded the boundaries of its discretion.

1. Idaho Code § 12-121 and I.R.C.P. 54(e)(1)

Idaho Code § 12-121 states:

In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or

---

[6] Although Reed's lack of shareholder status is determinative, it is also unlikely that Reed could meet the second qualification, of fairly and adequately representing the interests of the corporation as he had filed suit in the Underlying Case seeking to recover corporate money and assets for his own individual benefit. *See New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642 (Colo. App. 1993); *Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 341 (D. Ore. 1987).

amend any statute which otherwise provides for the award of attorney fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision therefore.

Idaho Rule of Civil Procedure 54(e)(1) reads as follows:

*Attorney Fees.* In any civil action the court may award reasonable attorney fees, which at the discretion of the court may include paralegal fees, to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract. Provided, attorney fees under section 12-121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation . . .

In reaching his conclusion that all of Reed's claims were brought frivolously, unreasonably, and without foundation, the district court clearly considered each claim which had been brought by Reed against the Respondents, and clearly articulated why it felt each claim was brought frivolously, unreasonably and without foundation. However, in its reasoning the district court applied the litigation privilege which, having never been addressed or applied previously by Idaho courts, is an issue of first impression. As such, Reed argues that it was inappropriate to grant attorney fees under I.C. § 12-121. *See Campbell v. Kildew*, 141 Idaho 640, 651, 115 P.3d 731, 742 (2005) ("Where a case involves a novel legal question, attorney fees should not be granted under I.C. § 12-121."). However, as may be seen from the foregoing analysis, even without taking the litigation privilege into consideration, the district court's decision to grant the 12(b)(6) motions to dismiss would be affirmed. This is because these claims were brought frivolously, unreasonably, and without foundation. The complaints filed by Reed are overly conclusive in nature with insufficient factual allegations, even under Idaho's notice-pleading standard, and demonstrate an often-incorrect understanding of the law. We therefore uphold the district court's grant of attorney fees under I.C. § 12-121 and I.R.C.P. 54(e)(1).

2. Idaho Code § 30-1-746(2)-(3)

Idaho Code § 30-1-746(2)-(3) provides that upon the termination of a derivative proceeding acourt may:

(2) Order the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or

(3) Order a party to pay an opposing party's reasonable expenses, including counsel fees, incurred because of the filing of a pleading, motion or other paper, if

29

it finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

"An award of attorney fees under [I.C. § 30-1-746] is discretionary and should be subject to review and vacated only upon a showing of an abuse of discretion." *McCann v. McCann*, 138 Idaho 228, 238, 61 P.3d 585, 595 (2002). Reed attempted to plead derivative causes of action against Respondents, but as the district court denied Reed's motions for leave to amend his complaints, the claims were never before the court. As the derivative causes of action were never a part of Reed's complaints the termination of this case cannot properly be characterized as the termination of a derivative proceeding. We find that the district court abused its discretion in awarding attorney fees under this statute, but as we uphold attorney fees under I.C. § 12-121 and I.R.C.P. 54(e)(1) this error is harmless.

### 3. Idaho Code § 48-608(5)

Under ICPA, I.C. § 48-608(5):

Costs shall be allowed to the prevailing party unless the court otherwise directs. In any action brought by a person under this section, the court shall award, in addition to the relief provided in this section, reasonable attorney fees to the plaintiff if he prevails. The court in its discretion may award attorney's fees to a prevailing defendant if it finds that the plaintiff's action is spurious or brought for harassment purposes only.

As Reed never purchased or leased any goods or services from Respondents and clearly did not meet the threshold requirements of making a claim under ICPA, it cannot be said that the district court abused his discretion in finding that Reed brought this claim spuriously, for the harassment purposes only. We therefore affirm the grant of attorney fees under the authority provided in I.C. § 48-608(5).

## F. Attorney Fees

Respondents request attorney fees on appeal pursuant to Idaho Appellate Rule 41, Idaho Code §§ 12-121, 30-1-746, and 48-608(5). Consistent with the immediately preceding analysis, we deny attorney fees under I.C. § 30-1-746 for the same reason we find that they were improperly awarded on this basis below. We find that Respondents are entitled to attorney fees under I.C. § 48-608(5), as Reed has appealed his ICPA claim despite the fact that the claim clearly failed as a matter of law, and was brought spuriously for harassment purposes only.

Additionally, Respondents are entitled to attorney fees under I.C. § 12-121 and I.A.R. 41 as this appeal was brought spuriously and without foundation, for harassment purposes only.

## V. CONCLUSION

The district court erred in taking judicial notice of the Underlying Case when considering Respondents' motions to dismiss under 12(b)(6), but as this Court considers the grant of a motion to dismiss on a *de novo* basis and has not considered the Underlying Case in this determination, this error is found harmless. We affirm the district court's grant of Respondents' 12(b)(6) motions to dismiss.

We hold that the litigation privilege applies in Idaho, and bars a litigant from bringing claims against the attorneys of his adversary in that litigation, where the claims are grounded in the attorneys' conduct or communications made in the course of representing their clients in that litigation, and the attorneys are acting within the scope of that representation and not solely for their own benefit. We find that in all instances the claims brought by Reed against Respondents were: (1) barred by the litigation privilege; (2) supported by insufficiently pled facts; (3) insufficient as a matter of law; or (4) are not ripe for litigation.

We affirm the district court's act of discretion in denying Reed's motions for leave to amend his complaints because (1) Reed was not a shareholder of the Corporations at the time of the alleged injury and therefore lacked standing to bring derivative actions, and (2) Reeds proposed alterations to his pleading regarding his direct causes of action did not alter the analyses, as applied to his original complaints.

The district court abused its discretion in awarding attorney fees to Respondents pursuant to I.C. § 30-1-746, but properly awarded attorney fees under I.C. §§ 12-121 and 48-608(5). Costs and attorney fees to Respondents.

Chief Justice EISMANN and Justices J. JONES and TROUT, J., Pro Tem, **CONCUR.**

HOSACK, J., Pro tem, specially concurring.

I concur with both the analysis and the holding. I only note that, in my opinion, the application of the litigation privilege is determinative as to the motion to dismiss. Once the litigation privilege is determined to be the applicable law, the trial court's grant of the motion to dismiss and its denial of the motion to amend could be affirmed on those grounds alone.